### BRICE v SAMUELS

Ohio Appeals, 1st Dist, Hamilton Co

Decided March 28, 1938

Ophelia Emden, Cincinnati, for appellee.

Paxton & Seasongood, Cincinnati, Roy Manogue, Cincinnati, J. Lewis Homer, Cincinnati, for appellant.

### OPINION

By MATTHEWS, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Hamilton county for $5000.00, in favor of a tenant against a landlord for damages on account of personal injuries alleged to have been received through the negligence of the landlord in maintaining a defective common passage way or walk. This judgment was rendered on the second verdict in favor of the plaintiff that had been returned in the case. The first verdict which was for $6500.00 was set aside on the ground that it was manifestly against the weight of the evidence. And that is the ground most strongly urged for reversing the judgment rendered on the second verdict, and here under review.

The other claimed error relates to the admission and exclusion of evidence.

(1) The pleadings and evidence show a complete denial of all the claims of the plaintiff except that he was a tenant occupying a portion of the premises at 1625 Dudley street in Cincinnati on the 30th day of September, 1933. There is evidence to support this denial in its entirety, but

we are of the opinion that the plaintiff produced sufficient evidence to support his claim that the outside toilet and the walk leading to it were for the use in common of the various tenants and that the defendant retained control of them and was charged with the duty of exercising reasonable care to maintain them in a reasonably safe condition, and that the defendant failed in that duty, were it not for evidence introduced by the defendant, which, in our judgment, so indisputably contradicts the claim of the plaintiff as to his injuries as to cast a reflection upon his evidence relating to the condition of the premises and the happening of the accident. The evidence to which we refer is the record of the Clark Street Health Center, or Clinic, maintained and operated by the city of Cincinnati, a municipal corporation, as a part of its health department.

The plaintiff claimed that prior to September 30, 1933, he had been a healthy, robust man, capable of doing very hard manual labor and that he continued in that condition of health and strength to that date admitting only that on one occasion in October he had taken a cold from exposure to rain and went to the Clark Street Clinic, where he was given some medicine and quit smoking cigarettes and entirely recovered from the cold. The record leaves it uncertain when he made this visit, but from the way it was developed, we assume it was some time prior to September 30, 1933.

Now in this case he claims that as a result of the accident upon which he founded his cause of action he received the following injuries:

"A compound fracture of the elbow, severe bruises to head, shoulder, hip and back (in the lumbar region), a stroke of paralysis affecting the entire left side of plaintiff from head to foot including the sex organs which will probably be permanent to some extent; that, as a direct result of said fall and injuries, the left elbow is permanently enlarged, distorted and displaced; the left arm and shoulder weakened; the left knee and the iliac crest of the left leg stiff, and permanently so; that plaintiff has suffered much pain from said injuries, and will continue to do so in the future; that he was confined to bed for twenty-six days immediately following said injuries; that as a direct result of his injuries he has developed a serious heart condition and serious injury to his nervous system, and he has suffered much worry and mental strain and will continue to do so in the future."

There hardly could be a greater contrast in a man's condition than that depicted of the plaintiff's before and after September 30, 1933. And if the evidence to the contrary were of the type that is constructed after the event from fallible human memory, the issue would be one for the jury to decide, and no court should disturb its finding. But the record in this case discloses evidence created day by day during this transition period from robust health to permanent invalidism, in such form as to be immune from the corrosion of forgetfulness producing a distorted image of the past event. We refer to the records of the Clark Street Clinic, made at the time the transaction occurred, by those in attendance there in the performance of official and professional duty. While there was an attempt to produce evidence reflecting upon the trustworthiness of these records, the attempt completely failed.

It is this evidence, we believe, that caused the trial court to set aside the first verdict as manifestly against the weight of the evidence, and it is this evidence that causes us to reach the conclusion that the second verdict cannot stand.

It appears from the record of the Clark Street Clinic that one Alvin Brice (and the record describes the patient with such particularly as to leave no doubt it was the plaintiff) came there for treatment on March 29, 1933, complaining that he had rheumatism in his joints and rheumatic fever and that at that time he had pains in the cardiac region, shortness of breath, fatigue, coughing and sleeplessness. It shows that he returned for treatment and was treated on April 4th and April 28th, May 9th, May 17th, May 23rd, July 18th, and September 26th, 1933, before the date of the alleged accident. The Clark Street Clinic Records shows that during that time he had extremely high blood pressure and that he was given the approved treatment for those ailments.

After September 30, 1933, he returned to the clinic for the first time on October 17, 1933, and was told to return in six months. The record of that visit shows no physical injury of any sort and no stroke, but on October 25, 1933, he returned notwithstanding he had been told to return in six months, and it was then for the first time that the record discloses anything about a stroke the recital being "Had a slight stroke of apoplexy." He went to the clinic

for treatment on November 7, 1933, January 2nd, February 13th, and either March or May 13th, 1934, which is the last entry in the record.

This Clark Street Clinc record accounts for all of the plaintiff's present disabilities, and shows that their origin could not have been an accident on September 30, 1933.

The plaintiff placed two physicians on the stand, who had treated him after this law-suit had been instituted for the same ailments shown by the Clark Street Clinic record, but produced no physician to testify to treating him on September 30, 1933, for traumatic injuries. Instead the plaintiff, his wife, and two other witnesses testified that Dr. Loverett was called on that day, and Dr. Loverett had since died. This was contradicted by several witnesses, who testified that Dr. Loverett was sick at that time, and was not in the city of Cincinnati for about two weeks before and two weeks after that date, he being at a reltive's home in Marion, North Carolina.

This record under review, therefore does not, in our judgment present conflicting evidence from which reasonable minds could draw conflicting inferences. We believe it requires us to say the judgment is manifestly against the weight of the evidence; and we so say.

(2) Evidence of repairs should not have been admitted. 2 **O. Jur. 831.** Furthermore, much of this evidence related to repairs having only a remote connection with the claimed defect.

(3) The testimony of Dr. Clark that the plaintiff came to him in June, 1934 "with a history of having been injured on September 30," was incompetent and should have been excluded. Of course, a patient may explain his condition to his physician so that the physician may intelligently prescribe for him, and the inclination to truth under such circumstances is regarded by the law as a substitute for an oath and to justify the disregard of the rule excluding self-serving declarations, but this rule is limited to the purpose of proper treatment of a patient. It does not extend to facts in issue other than the physical condition of the patient. **Industrial Commission v Strassel, 11 Oh Ap 234; 17 O. Jur. 341; Coutellier v Industrial Commission, 126 Oh St 546; Cleveland Ry Co v Merk, 124 Oh St 596, at 605.**

(4) On cross-examination of James Powell, he was asked these questions:

"Q. Are you the boy that was in trouble?
"A. No ma'am, never been in any trouble.
"Q. Weren't in any trouble in automobile stealing, were you?
"A. I don't understand.
"Q. Auto stealing?
"A. No ma'am."

While evidence of prior convictions would have been admissible, as would also reputation for truth and veracity, we know of no rule under which specific acts of wrongdoing may be admitted to affect the credibility of a witness. 28 R. C. L. (§211), 623.

This was improper cross-examination and particularly so as no attempt or offer to prove the wrongdoing was made.

It is claimed that the court erred in its charge in failing to specifically refer to the effect of notice—actual or constructive—upon the question of defendant's liability. The court did charge generally upon the subject of negligence and if the defendant desired elaboration to include instruction upon the subject of notice, he should have requested it.

We find no other prejudicial error upon the record.

For these reasons, the judgment of the Common Pleas Court is reversed, and the cause remanded to the Common Pleas Court for further proceedings according to law.

ROSS, PJ and HAMILTON, J, concur.