STATE, Plaintiff-Appellee, v. SHIVELY, Defendant-Appellant.

Ohio Appeals, Fourth District, Jackson County.

Decided May 24, 1960.

*Mr. Roy J. Gilliland,* prosecuting attorney, for the State of Ohio.

*Mr. Thomas H. Monger* and *Messrs. Reese & Willard,* for defendant-appellant.

COLLIER, J. David Shively was indicted by the Grand Jury of Jackson County and charged in three separate counts with the crime of sodomy. Trial by jury resulted in conviction on the first and third counts, the second count having been withdrawn by the Court from consideration of the jury. The motion for a new trial was overruled and judgment of sentence imposed.

In his appeal on questions of law to this court, the defendant-appellant, hereinafter referred to as the defendant, sets forth six alleged errors in the trial of the case. The substantial errors complained of relate, first, to the admission of evidence to establish the acts and conduct of the defendant prior to the acts alleged in the indictment; secondly, error in the court's instructions concerning the purposes for which the jury might consider such evidence, and, thirdly, that the verdict is contrary to law and against the manifest weight of the evidence.

The defendant was specifically charged in the indictment with having carnal copulation, against nature, with a certain male person, to-wit, James Graham, on January 3, 1959 and February 7, 1959.

The testimony which defendant urges was inadmissible and prejudicial to the rights of the defendant is that of the following witnesses: Ronald Vance, Harry Freeman, Charles Dickson, Chief Probation Officer, Juvenile Court and Elba Ross, Chief of Police of Jackson. The record discloses that after the witness, Ronald Vance, in response to questions of the prosecuting attorney, told of a visit to defendant's home with James Sickles, a soldier, in May, 1957, at which time Sickles and defendant went into another room of the defendant's home and later Sickles had $4.00, the following colloquy occurred:

MR. MONGER: Object on all of it, your Honor,—over two years ago; think there's a precedent for that.

BY THE COURT: Yes. The question to which the objection is related, however—I will sustain the objection.

It will be noted that an objection was made and sustained to all of Vance's testimony. Apparently, counsel did not consider it necessary to request the court to direct the jury to disregard this testimony. In any event, no such request was made and the presumption is that the jury understood the ruling and acted accordingly.

The witness, Harry Freeman, was permitted to testify that about one year prior to the trial, the defendant drove his automobile six or seven times around the city block where the witness and another young man were "squatted down" under a shed in front of a pool room; that the last time the defendant came around the block, he pulled up to the curb, stopped, motioned the young men to his car and asked if they wanted to take a little ride. They told him, "No sir," and the defendant again drove around the block and disappeared.

Charles Dickson, Chief Probation Officer of the Juvenile Court, was permitted to testify as follows:
(R. 79)

"Q. Mr. Dixon, around July '58, or prior thereto, had you received any other complaints from people other than the Police Department concerning Dave Shively?

"A. Yes, I have.

"MR. MONGER: Objection. At this time I ask the Court to declare a mistrial—highly improper.

"BY THE COURT: Overruled."

And Elba Ross, Chief of Police, as shown on page 153 and 154 of the record, was permitted to testify as follows:

"Q. Had your department reason to believe prior to his statement there had been some association?

"MR. BUTLER: Objection, your Honor.

"Q. Between Jimmie Graham and the defendant, Dave Shively?

"MR. BUTLER: Renew the objection, your Honor.

"BY THE COURT: Grounds, please?

"MR. BUTLER: The record of the department would speak for itself, produce that, fine.

"BY THE COURT: Objection overruled. You may answer.

"A. Yes sir, we had.

"Q. Chief Ross, prior to the time Jimmie Graham was in your station on February the 21st, tell us whether or not there had been any investigation going on concerning the defendant and Jimmie Graham, or the defendant and other boys?

"MR. BUTLER: Now—

"BY THE COURT: Come to the bench, please.

(Counsel to Bench)

"BY THE COURT: I am going to overrule your objection. You may answer.

"A. There had."

The defendant also claims error in the Court's permitting the State to introduce testimony tending to show that young men frequently visited defendant's home, where he lived alone.

In determining whether or not the court committed error in permitting the introduction of the testimony of Harry Freeman, as above outlined, it should be noted, that long before the enactment of Section 2945.59, Revised Code, it was the well established rule of criminal law in Ohio that where the elements of motive, intent or identity were involved, evidence of an independent crime, not charged in the indictment, was admissible for the sole purpose of showing these elements of proof. See 15 Ohio Jurisprudence 2d, 518, Section 349. Perhaps the most applicable case in Ohio is *Barnett* v. *State*, 104 Ohio St., 298, 135 N. E., 647. In that case, the defendant was charged in the indictment with sodomy with a little girl, six years of age and evidence of other like assaults upon other little girls was held

admissible to prove habitual moral degeneracy, sexual perversion and his criminal course of lascivious conduct, and for the purpose of identifying the defendant as a sexual pervert who committed the crime charged in the indictment. In the *Barnett case*, the question of identity was an important issue.

Section 2945.59, Revised Code, reads:

"Proof of Defendant's Motive. In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

This statute, it will be observed, permits the introduction of "*any acts* of the defendant which tend to show his mtoive or intent, etc."

Former Section 13444-19, General Code, used the term, "Any like acts or other acts." It will also be observed that the Statute, in its present form, employs the term, "Any acts of the defendant," and not "crimes" or "offenses." The latter terms were used exclusively in the language of the courts in referring to evidence that was admissible under the common law rule before the enactment of the statute. The words "crime" and "offense" carry the meaning of a wrongful and unlawful act, while the simple word, "act" means "to do" or the "process of doing," not necessarily including wrongful or unlawful implication. This statute is declaratory of the common law and is perhaps in a broader form. *State* v. *Moore*, 149 Ohio St., 226, 78 N. E. 2d, 365.

As we construe the statute, any act of the defendant, whether or not it is a crime, which tends to show motive or intent or state of mind of the defendant is admissible for that purpose. The last phrase of the section supports this conclusion. It reads:

"Notwithstanding such proof may show or tend to show the commission of another crime by the defendant."

To use the language of Judge Doyle in *State* v. *Jackson*, 82 Ohio App., 318, 81 N. E. 2d, 546:

"It has long been recognized that, since special types of emotion or passion in persons are likely to lead to the doing of specific acts, the presence of such emotion or passion in a person charged with crime, prior to the time of the crime, has an evidential bearing as to the existence of the same emotion or passion at the time in question." * * * The use or purpose of such evidence is to show an unnatural sexual desire at the time charged. * * *and thus the evidence indicates the quality of degenerative and perversive emotion possessed by the person charged with the crime."

In the *Jackson case*, the defendant was charged with incest with a minor daughter and evidence of prior like offenses with other daughters of the defendant was held to be admissible.

What is the probative effect of this testimony? Is it sufficient to substantially establish an act of the defendant tending to prove motive or state of mind or intent? Or, is it too vague and remote and disconnected with the specific crime with which the defendant stands charged in the indictment? Obviously, it does not directly establish any similiar act of sodomy. The defendant may have had such motive in asking the boys to take a ride with him. The prosecuting witness testified to an act of sodomy with the defendant in defendant's automobile. Or it may have been a case of mistaken identity by the defendant. Likewise, acts of the defendant entertaining young men in his home, as described by the police officers, may have been perfectly innocent, as claimed by the defendant. But is not this a question for the jury to determine? In our opinion, under the broad terms of the statute, any act of the defendant which, either directly or by reasonable inference, tends to show a course of lascivious conduct, degeneracy and sexual perversion is admissible to show such qualities of character and moral disposition and that the acts of the defendant, shown by this testimony, are within the rule, making such evidence admissible.

In regard to the alleged error relating to the testimony of Charles Dickson and Alba Ross, the record discloses that their testimony, above quoted, was preliminary to their later statements that they, with other police officers, observed the

defendant and a young man sitting close together on a stool in defendant's home; that the young man had his arm around defendant's shoulder and that then the lights in the house were turned off; that after several hours vigil, the lights were not turned on and the officers departed.

When this testimony was introduced, the court did not limit it for any certain purpose, but in the general charge, gave the following instruction, which the defendant contends is erroneous and prejudicial:

"There has also been evidence admitted in this case by the court of prior, unusual or immoral acts, or strange conduct of the defendant, as well as alleged unusual circumstances occurring near his home. There has also been considerable evidence as to acts of the defendant on times other than those mentioned in the indictment. Now this evidence, for instance, of the acts on a trip taken in the middle of October, these acts do not and cannot directly prove the defendant guilty of the acts alleged on January the 3rd or February the 7th; this evidence was allowed for whatever effect you determine it might have on the alleged moral disposition and perversity of the defendant, it being a theory of the law that a person who has indulged in similiar conduct at other times to that alleged in the indictments is more likely to have that type of moral disposition to commit the act alleged than one who has not indulged in such acts."

The admissibility of evidence of similar acts committed by the defendant in a criminal case is an exception to the general rule that proof of the commission of other crimes by the defendant may never be shown to prove guilt of a specific crime charged in the indictment. Such evidence is admissible only for a certain purpose and, in the case at bar, it is admissible only to prove moral degeneracy and sexual perversion. Such evidence should be limited by the court in its application by the jury to such purpose. *Barnett* v. *State, supra.* The defendant contends the court did not so limit this evidence to such purpose.

An examination of the court's charge, as above quoted, shows that the jury was instructed to consider such evidence only in determining the "alleged moral disposition and perversity of the defendant." The court plainly instructed the jury

that, "These acts do not and cannot clearly prove the defendant guilty of the acts alleged on January the 3rd and February the 7th;" (The dates of the specific crimes alleged in the indictment).

It is urged by the defendant that the court committed prejudicial error in its charge by referring to "prior unusual and immoral acts or strange conduct of the defendant, as well as unusual circumstances occurring near his home." This language could well have been omitted because it is immediately followed by this statement:

"There has also been considerable evidence, as to acts of the defendant on times other than those mentioned in the indictment."

The language complained of is mere repetition and surplussage. Its use was unfortunate. The test is whether or not the jury was thereby probably misled or the rights of the defendant prejudiced. After a careful study of the entire charge on this subject, we are unable to agree with defendant's contention. We do not see how the jury could have been misled and the rights of the defendant prejudiced, after considering the charge as a whole.

The third question presented by the assignment of errors is whether the verdict and judgment is against the weight of the evidence. As heretofore stated, the complaining witness, James Graham, a boy 16 years of age, testified, in detail, concerning the commission of the crime. It would serve no useful purpose to recite any of his testimony. It is sufficient to say that his testimony was positive in describing the acts and, if believed by the jury, would carry great weight. Obviously, by their verdict, the jury did believe this witness and did not believe the denial of his statements by the defendant. It was entirely within the province of the jury to determine the credibility of the witnesses and the weight and value to be given to their testimony. When the evidence is conflicting and there is substantial evidence to support the verdict, a reviewing court may not invade the province of the jury and set such verdict aside.

After a careful examination of the entire record and a full consideration of all the alleged errors in the trial of the case, we find no substantial errors such as would deny the defendant

a fair trial and, therefore, the judgment must be and hereby is affirmed.

Judgment affirmed.

GILLEN, P. J., and RADCLIFF, J., concur.