THE STATE OF OHIO, APPELLEE, *v.* SCHECTER, APPELLANT

[Cite as State v. Schecter (1974), 47 Ohio App. 2d 113.]

114

(No. 33003—Decided October 24, 1974.)

*Mr. John T. Corrigan,* for appellee.
*Mr. Ralph D. Sperli,* for appellant.

KRENZLER, J. Defendant appellant, Max Schecter, was indicted by the Cuyahoga County Grand Jury on February 13, 1973, for the crimes of murder in the first degree (R. C. 2901.01), assault with intent to kill (R. C. 2901.24), and unlawful possession of a firearm (R. C. 2947.30). The case was tried to a jury and on June 12, 1973, the jury found the defendant appellant guilty of the lesser included offenses of murder in the second degree and aggravated assault and a verdict of not guilty was returned on the third count of unlawful possession of a firearm. Defendant was sentenced to the Ohio State Penitentiary.

The relevant facts leading to the defendant's arrest, indictment, trial and conviction are that one Linda Kyman, deceased, who was 25 years old, was an employee at a McDonald's Restaurant where the defendant Max Schecter was employed as a manager. Linda Kyman had on occasion loaned money to the defendant. The defendant had come to the Kyman house on January 12, 1973, in response to Helen

Kyman's (Linda's mother) request that he return the money he had borrowed from her daughter. On this occasion the defendant, Max Schecter; the decedent, Linda Kyman; and her mother, Helen Kyman were all present at the Kyman home. The defendant had a gun on his person, which he contended Helen Kyman requested that he bring in order to scare her daughter.

There is a conflict concerning what occurred at the Kyman residence; but as a result of the incident on January 12, 1973, Linda Kyman was fatally shot and her mother was injured. After the shooting the defendant left the Kyman house and proceeded to his automobile.

Mrs. Kyman also exited the house and told a neighbor that the defendant had killed her daughter. Subsequently, the defendant was arrested by Patrolman Joseph Planter.

After his arrest the defendant voluntarily gave a tape recorded statement to the police. In the statement he denied that he shot Linda Kyman, but claimed that Helen Kyman shot her daughter.

At the trial Helen Kyman testified for the state to the effect that she had called the defendant and asked him to return the money he had borrowed from her daughter, Linda, and that he came to the house to return the money. She stated that after a conversation about the money an argument and struggle ensued during which the defendant kicked her and she fell down the stairs. She testified that her daughter jumped on the defendant and while they struggled she ran for help, and when she came back her daughter was dead.

On cross-examination, defense counsel attempted to impeach Mrs. Kyman by showing that it was she and not the defendant who had shot and killed her daughter Linda. Defense counsel also questioned Helen Kyman with reference to prior inconsistent statements she made relating to the loan transaction between the defendant and the decedent.

In addition, the state called a number of people who came upon the scene after the shooting took place.

Mrs. Andrea Canowitz testified that she heard a woman screaming, whereupon she looked out her window and saw

a woman, later identified as Mrs. Kyman, standing on the sidewalk bleeding.

Mr. Aaron Canowitz testified that he left his home and encountered Mrs. Kyman who said, "Help me, please. He killed my baby and I know who he is." He then accompanied Mrs. Kyman into her house and found Linda Kyman lying on the floor in the dinette.

Mr. Edward Gelbmann testified that he followed the man pointed out by Mrs. Kyman to the parking lot of a supermarket where he recorded the license plate number of his car and gave it to the police.

The state also introduced evidence which showed that the defendant's weapon was the one that fired the bullet that killed Linda Kyman. Further, the state produced evidence concerning loan transactions between the defendant and Linda Kyman. Also scientific tests showed that blood of the victim's type was found on the defendant, and a test of the defendant's hands for firearm discharge residue also rendered positive results.

The state also played to the jury the defendant's entire tape recorded statement. In the statement the defendant denied having shot Linda Kyman and accused Mrs. Kyman of shooting her daughter. Defense counsel objected to the introduction of certain parts of the tape recording relating to a 1969 event wherein the defendant acquired a gun to scare a co-employee.

The state then rested and the defense went forward. The defendant did not take the stand, but witnesses were called for the defense to testify generally as to the defendant's character and reputation for truth and veracity in the community and about his quiet reserved nature. The defense did not call any witnesses to testify regarding Helen Kyman's reputation for truth and veracity in the community.

After the defense rested, the state contended that the combination of the defendant's accusation in his taped statement that Mrs. Kyman committed the crime and the defense's cross-examination of Mrs. Kyman constituted an attack on her credibility which would permit her rehabilitation by rebuttal state witnesses.

Defense counsel objected, the objection was overruled, and the state was permitted to call two Common Pleas Court judges who testified concerning Helen Kyman's general character and reputation for truth and veracity in the community. After the state again rested, the court charged the jury who found the defendant guilty as noted above.

The defendant appellant has taken this appeal and has two assignments of error.

1. The trial court erred in overruling defendant's motion to delete portions of the defendant's statement to the police which were immaterial to the issues at hand and prejudicial to the defendant's right to a fair trial.

2. The trial court improperly allowed testimony as to the reputation and character of a state's witness.

The first assignment of error is not well taken.

At the trial the appellant's entire statement made to the police was admitted into evidence. Defense counsel made a motion to delete portions of the statement because they were irrelevant, and because their nature was prejudicial to the defendant's right to a fair trial. The first portion objected to was a reference relating to the purchase of the gun. The appellant's statement in this regard reads as follows:

"Q. But, definitely the gun she shot Linda with was your gun? You owned it?

A. Yes.

Q. Did you load it?

A. I did not load it yesterday. The only recollection I have of loading the gun was when I bought it. This was back in 1969.

Q. Where did you buy it?

A. Atlantic Mills.

Q. And for what purpose?

A. Well, at that particular time, I was very mad at somebody, and I wanted to scare somebody in 1969.

Q. Did you, at that time, scare anybody?

A. No, I did not.

Later in his statement the appellant was asked:

Q. Would you like to tell us who you bought the gun to scare?

A. I bought the gun to scare Mr. Wexler, Paul Wexler.

Q. What was your misunderstanding with Mr. Wexler about?

A. Mr. Wexler was my boss three years ago when I managed a restaurant at Severance Center, and at that time, he was the supervisor. I was the one who got him the job to be my boss, and he was there a short time, and because of him I got terminated. There was money missing from a daily deposit into the bank. The company knew it wasn't me, cause they never prosecuted me. They held back a two week pay check of mine. Mr.—got it from me by telling them to either prosecute me or send the money out. I knew at that time it wasn't me—there was only one other person who had access to the money, and because of him, I got terminated."

The state contends that because the statement was voluntarily made it must be admitted into evidence in its entirety. We disagree. The appellant's statement, as in the case of all evidence, is subject to the rules of admissibility. Evidence which is admissible must be relevant. See *Whiteman* v. *State* (1928), 119 Ohio St. 285. If material contained in the statement is legally inadmissible because it is irrelevant the court should delete such portions from the record in response to appropriate motion. We conclude that the portions of the appellant's statement in question were not relevant and should have been excluded.

The state further contends that these portions of the appellant's statement were admissible under the language of R. C. 2945.59, the so-called Similar Acts statute, because it tends to show the presence of a common plan or intent. To be admissible under this theory there must be such a logical connection between the act and the crime charged that proof of the one will naturally tend to show that the accused is the person who committed the other. There must be some similarity of methodology employed which itself would constitute *probative* evidence of the probability that the same person committed both the act and the crime charged. *State* v. *Hector* (1969), 19 Ohio St. 2d 167. Fur-

ther, the acts must not be too remote and must be closely related in nature and time and place to the offense charged. *State* v. *Watson* (1969), 20 Ohio App. 2d 115. It is also the case that this section must be strictly construed against the state. *State* v. *Watson, supra.*

Looking at the evidence offered by the state in this case we find it inadmissible under the provisions of R. C. 2945.59. We see no such logical connection between the acts in question and the crime charged that would lead a jury to believe that having done the one, the appellant would likely be the person who indeed committed the other. Further, the acts recounted were not closely related in time, nature, and place to the offense charged in the indictment.

The defendant in his statement made it clear that he had, in fact, never used the gun to scare anybody. There was no evidence admitted which disputed this point. While it was error for the trial court to allow this part of the defendant's taped statement into evidence, the fact that he definitively established that the acts committed did not constitute a crime renders the error harmless and we will not reverse on this assignment of error standing alone. *State* v. *Whigham* (1938), 60 Ohio App. 181.

The second assignment of error deals with the issue of whether state's witness, Helen Kyman's character and reputation for truth and veracity was placed in issue by the defendant so as to enable the state to call rebuttal witnesses to testify regarding Helen Kyman's reputation for truth and veracity in the community.

In the trial of a case, when witnesses testify, the trier of the facts, whether it be a jury or the court, determines whether a witness is telling the truth. The trier of the facts may believe all, part or none of the testimony of a witness. This is generally defined as the credibility of a witness, and it is the quality in a witness which renders his evidence worthy of belief.

Witnesses testify under oath or affirmation and it is presumed that they are truthful but it is up to the trier of the facts to determine the witness's ultimate credibility.

Many times when witnesses testify there are contradic-

tions, disagreements and inconsistencies in their testimony and the trier of the facts must decide who to believe. This involves general credibility.

It is noted that a party cannot call other witnesses to support the credibility of his witnesses. In other words independent witnesses cannot be called to testify regarding the truthfulness of other witnesses. *Arnold* v. *State* (1929), 33 Ohio App. 185. There are two basic reasons for this rule. The first is that all witnesses under oath are presumed to be telling the truth. Secondly, the issue of a witness's truthfulness or credibility is collateral to the principal issue in the case. *Carr* v. *State* (1900), 21 O. C. C. 43, affirmed 65 Ohio St. 612.

However, the opposing party either by cross-examination or by extrinsic evidence can make direct attacks on the credibility of an opposing party's witness by attempting to impeach him by showing bias, prejudice, corruption, interest in the outcome of the case, prior inconsistent written or oral statements and bad general character and reputation for truth and veracity in the community.

Jurisdictions are in conflict as to which of these impeachment techniques permit the opposing party to call other witnesses to rehabilitate the witness who has been impeached, but all jurisdictions recognize that when a witness is impeached by a showing that his or her general character and reputation for truth and veracity in the community is bad, the party offering the witness may attempt to rehabilitate him by calling rebuttal witnesses to testify that his or her general character and reputation for truth and veracity is good. It is noted that in this context the terms "character" and "reputation" are considered synonymous and it is considered "character for truth and veracity" and "reputation for truth and veracity."

In the absence of a witness being impeached by cross-examination, or by extrinsic evidence, as noted above, a party may not introduce evidence to enhance the credibility of his witnesses. It is the general rule that a party cannot bolster his witnesses by proving either specific instances of good character relative to truth and veracity or by demon-

strating the witness's good general character and reputation for truth and veracity in the community before the witness is affirmatively impeached by the opposing party. *Arnold* v. *State, supra* at 198. However, there is an exception to this rule in criminal cases where a defendant is permitted to take the stand and place at issue either his character and reputation for truth and veracity or other aspects of his character not related to truth telling.

When any witness takes the stand, including the defendant in a criminal case, he is always subject to impeachment and the opposing party may introduce testimony concerning his or her general character and reputation for truth and veracity in the community. If this is done rebuttal witnesses may be called to testify regarding the witness's general reputation for truth and veracity in the community. A witness can never be impeached through evidence of specific instances of bad character whether related to truthfulness or otherwise. *Brice* v. *Samuels* (1938), 59 Ohio App. 9; Also, see *State* v. *Cochrane* (1949), 151 Ohio St. 128.

In the present case, the state's witness, Helen Kyman, testified that the defendant killed her daughter. The defendant, through his taped statement which was introduced by the state, denied that he committed the murder and charged that the state's witness, Mrs. Helen Kyman, had in fact commited the crime. Further, the defense in its opening statement and its cross-examination of Helen Kyman maintained that Helen Kyman committed the crime. The state then called two common pleas judges as rebuttal witnesses to testify as to Mrs. Kyman's general character and reputation for truth and veracity in the community and they both testified that it was good.

The state claims that by the defendant raising this issue in its opening statement and in its cross-examination of Helen Kyman, the defendant made an attack on the credibility of the witness, Helen Kyman, which would permit the state to offer rebuttal evidence to rehabilitate her.

The principal question we must resolve is whether the defendant's denial of the commission of the crime and his charge in his opening statement and in his cross-exam-

ination and in his taped statement that Mrs. Kyman committed the crime is merely an attack on general credibility, or is it the type of attack that is considered impeachment of character and reputation for truth and veracity in the community so that it will permit the state to call rebuttal witnesses.

We must first decide whether the defendant's charge that state's witness Helen Kyman committed the crime is relevant testimony. The defendant's testimony was relevant and therefore he could deny he committed the crime and also accuse another person of committing it. Such testimony is relevant because it deals with the principal issue in the case and that is whether the defendant, Max Schecter, shot and killed Linda Kyman.

Generally, a witness cannot be impeached by evidence that he committed a crime or was arrested or indicted because such testimony is irrelevant and incompetent and cannot be admitted. Consequently, there would be no rebuttal testimony allowed. But a party can introduce prior convictions of a witness in an effort to weaken his credibility. *Keveney* v. *State* (1923), 109 Ohio St. 64, but see *State* v. *Hector* (1969), 19 Ohio St. 2d 167, for an execption to this rule.

A conviction for a crime according to judicial theory tends to cast doubt upon the witness's credibility concerning truth and veracity. For this reason, proof of conviction is allowed for the purpose of impeachment. When this is done rebuttal witnesses may be called to testify in regard to that witness's character and reputation for truth and veracity because the evidence of the conviction of a crime does cast doubt upon a witness's credibility concerning truth and veracity. While the charge that a state's witness committed one or more past crimes, for which the defendant is not presently on trial, will not permit the calling of rebuttal witnesses, if the witness is charged with having committed the crime for which the defendant is on trial, rebuttal testimony as to character and reputation for truth and veracity of the witness is allowed. See *Webb* v. *State* (1876), 29 Ohio St. 351.

In *Webb*, the defendant was indicted for forgery. A state's witness testified against the defendant. The defendant took the stand and denied that he committed the crime and accused the state's witness of committing the crime. There was no direct attack on the state's witness's character and reputation for truth and veracity. However, the state was permitted to call rebuttal witnesses to testify regarding its witness's character and reputation for truth and veracity in the community.

The Court in *Webb* stated that while evidence cannot be given to prove an infamous crime against a witness of which he has not been convicted for the purpose of impeaching his credit where the question as to whether the witness is guilty of such crime becomes a legitimate subject of inquiry in the trial, his reputation for truth may be proved to rebut any imputation against his credit which the evidence of guilt makes against him. Because the charge of committing the crime in issue can make the witness wholly unworthy of belief, the Court in *Webb* allowed rebuttal testimony.

In the present case there was not the typical attack on character and reputation for truth and veracity. The state's witness, Helen Kyman, testified that the defendant committed the crime. The defendant denied that he committed the crime and accused the state's witness of committing the crime. Consistent with *Webb* such a charge by the defendant against the state's witness is considered an attack on the witness's ability to tell the truth and therefore permits the calling of rebuttal witnesses.

The rule in *Webb* decided 98 years ago may not be a fair one because it permits the calling of rebuttal witnesses to testify as to a witness's character aand reputation for truth and veracity when there has not been an attack upon, or a direct effort made to impeach that witness's character and reputation for truth and veracity.

The holding in *Webb* has not been overruled in 98 years, but perhaps it should be again reviewed by the Supreme Court of Ohio; until *Webb* is overruled we are bound to follow it.

At first blush, it appears that the calling of two common pleas judges as rebuttal witnesses to testify as to Helen Kyman's reputation for truth and veracity in the community was prejudicial. But we find no law to the effect that certain classes of rebuttal witnesses are disqualified. We recognize that judges' testimony in a case may have greater weight than other witnesses because of the great esteem in which they are held and because of the dignity of their position. However, there is nothing either in the law or in the Canons of Judicial Ethics that disqualifies them as witnesses.

It appears that the state did not need to call these rebuttal witnesses because it had a relatively strong case against the defendant. A careful review of the record clearly establishes that there was sufficient evidence upon which a jury of reasonable persons could find the defendant guilty of murder beyond a reasonable doubt, without the rebuttal testimony. However, the state is free to try its case in any manner it chooses as long as prejudicial error is not created.

Upon reading the entire record, we conclude that there was no error prejudicial to the defendant. The second assignment of error is not well taken.

*Judgment affirmed.*

JACKSON and DAY, JJ., concur.

DAY, J., concurring. I concur in the judgment and add these few words to make clear my comprehension of the effect of our decision on an evidential point in this case.

Generally speaking, the credibility of witnesses cannot be supported until it is directly attacked. Direct attack is usually exemplified by impeachment based on testimony by other witnesses that the witness under attack has a bad reputation for truth and veracity.[2] Such an attack can be

---

[2] Discussions of "reputation" and "character" frequently use those terms as though they were interchangeable. If character is what a man is and reputation is what people think he is, then generally evidence either supporting character or attacking credibility directly is "reputation" evidence.

met by rebuttal witnesses supporting the attacked witness's good reputation in the same particulars.

As I understand it, all that is done by our decision in this case is to recognize and approve a particular variety of direct attack upon a witness's credibility based on *Webb* v. *State* (1876), 29 Ohio St. 351.

The *Webb* case, in effect, concluded that when a state's witness is accused by the defendant with having committed the crime for which the defendant is on trial, the attack is direct. That straightness warrants allowing the state to call rebuttal witnesses to support its witness's "reputation for truth *, * * to rebut any imputation against his credit which the evidence of guilt makes against him." *Webb* v. *State, id.* at 358.

The application of *Webb,* thus construed, does not unduly widen the opportunity to divert trials and waste time by concern with collateral issues.