THE STATE OF OHIO, APPELLEE, *v.* STROBEL, APPELLANT.

(No. 7-86-7—Decided June 30, 1988.)

*John H. Hanna,* prosecuting attorney, for appellee.

*Kenneth Koch,* for appellant.

SHAW, J. This is an appeal from a judgment and sentence in the Common Pleas Court of Henry County, wherein the defendant-appellant, David E. Strobel, was convicted in a jury trial of three counts of gross sexual imposition in violation of R.C. 2907.05(A)(3). The charges involved three separate instances of sexual contact with the defendant's two granddaughters over a seven-month period in 1985. Both granddaughters were less than thirteen years of age at the time.

At trial, the first granddaughter testified that the defendant had sexual contact with her on two separate occasions when she was eleven years old. On one occasion she testified that the defendant had rubbed her breasts and vaginal area. On another occasion she testified that the defendant had placed her hand on his penis and again touched her breasts. The second granddaughter testified that on one occasion when she was eight years old the defendant had touched her vaginal area and placed his fingers inside her.

The defendant raises the following three assignments of error:

"I. The trial court committed prejudicial error in permitting the state of Ohio to join the indictments and not ordering separate trials.

"II. The trial court committed prejudicial error in permitting the state of Ohio to offer testimony of two witnesses concerning past alleged sexual acts by the defendant which evidence was not timely and was immaterial and inadmissible.

"III. The defendant was prevented from having a fair trial by prej-

udicial acts on the part of the prosecuting attorney."

## I

Concerning the defendant's first assignment of error, Crim. R. 8(A) provides:

"Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, *are of the same or similar character,* or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." (Emphasis added.)

Likewise, R.C. 2941.04 provides in pertinent part:

"An indictment or information may charge two or more different offenses connected together in their commission, or different statements of the same offense, *or two or more different offenses of the same class of crimes or offenses,* under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated." (Emphasis added.)

Insofar as the indictment issued against the defendant charged him with three counts of gross sexual imposition, the indictment satisfied both Crim. R. 8(A) and R.C. 2941.04 in that the defendant was charged with crimes of the same class or character.

The defendant asserts, however, that joinder of the three counts was prejudicial and the trial court erred in not ordering separate trials. Regarding the defendant's claim, R.C. 2941. 04 also provides:

"* * * The court in the interest of justice and for good cause shown, *may* order different * * * counts set forth in the indictment * * * tried separately or divided into two or more groups and each of said groups tried separately. * * *" (Emphasis added.)

Moreover, Crim. R. 14 provides:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment, * * * the court shall order an election or separate trial of counts, * * * or provide such other relief as justice requires."

In *Braxton* v. *Maxwell* (1965), 1 Ohio St. 2d 134, 135, 30 O.O. 2d 486, 487, 205 N.E. 2d 397, 398, the Supreme Court of Ohio, construing R.C. 2941.04, reasoned that:

"* * * It is a matter within the discretion of the trial court as to whether an accused shall be tried separately on the different counts of an indictment."

As to our review of the trial court's determination of a severance issue, the First District Court of Appeals has stated in *State* v. *Durham* (1976), 49 Ohio App. 2d 231, 233, 3 O.O. 3d 280, 282, 360 N.E. 2d 743, 746:

"Where an indictment charges two or more distinct offenses, even if improperly joined, the exercise of authority to compel the prosecutor to make an election rests in the sound discretion of the court, to be exercised in the promotion of justice and upon good cause shown, *and it is the policy of reviewing courts to permit a rather wide range in this respect.* Unless the discretion has been exercised to the manifest injury of the accused, there is no error." (Emphasis added.)

In the case before us, we believe that the jury was able to easily segregate the evidence pertaining to each count in the indictment. Moreover, the trial court instructed the jury as to the importance of "* * * consider[ing] each Count and the evidence applicable to each Count separately * * *." While there is always the possibility of prejudice in joining

separate instances of any offense in the same indictment, "* * * the burden was upon the defendant to either *affirmatively demonstrate* before trial that his rights would be prejudiced by the joinder, or to show at the close of the state's case, or at the conclusion of all the evidence, that his rights actually had been prejudiced by the joinder." (Emphasis added.) *State* v. *Williams* (1981), 1 Ohio App. 3d 156, 159, 1 OBR 467, 471, 440 N.E. 2d 65, 69.

After reviewing the entire record, we find that the defendant has failed to affirmatively demonstrate any prejudice in the joinder of these counts in the indictment. Accordingly, in this case, we cannot say that it was an abuse of the trial court's discretion to deny the defendant's motion to sever.

Finally, we note that the defendant failed to renew his motion to sever the counts either "* * * at the close of the state's case * * * or at the conclusion of all the evidence * * *." *Id.* The weight of authority indicates that if a motion to sever is not renewed, "* * * it is waived." *State* v. *Owens* (1975), 51 Ohio App. 2d 132, 146, 5 O.O. 3d 290, 298, 366 N.E. 2d 1367, 1376, citing *United States* v. *Porter* (C.A. 8, 1971), 441 F. 2d 1204, certiorari denied (1971), 404 U.S. 911; *Nassif* v. *United States* (C.A. 8, 1967), 370 F. 2d 147; *Williamson* v. *United States* (C.A. 9, 1962), 310 F. 2d 192; *Finnegan* v. *United States* (C.A. 8, 1953), 204 F. 2d 105, certiorari denied (1953), 346 U.S. 821.

For all of these reasons, we find no error in the refusal of the trial court to sever the charges in this case and the defendant's first assignment of error is overruled.

## II

In his second assignment of error, the defendant argues that the trial court committed prejudicial error in allowing two rebuttal witnesses for the state to testify as to prior instances of sexual activity with the defendant.

The defendant filed several motions in limine prior to trial in order to prevent the introduction of testimony as to the defendant's prior sexual acts with witnesses other than the two granddaughters. The trial court, upon consideration of the motions in chambers immediately prior to trial, ruled that due to the remoteness of this testimony, it would not be admissible in the state's case in chief. Thereupon, the following discussion took place between the prosecution and the court:

"[Prosecutor:] If the Court please, I understand — I think I understand the Court is saying that as witnesses in my case in chief I'm going to be prohibited from calling, at least insofar as their testimony would relate to prior sexual acts, any of the witnesses that the State would propose to call, but if they would fall under any of the reasonable rebuttal testimony, we would be permitted to call them as rebuttal witnesses?

"THE COURT: If the Defendant, *during his case in chief,* raises issues that can be rebutted by that testimony, I think that that's permissible rebuttal." (Emphasis added.)

During trial, the defendant, who had taken the stand and testified on direct examination was asked the following questions by the prosecutor *on cross-examination*:

"Q. You find that whole idea repugnant, don't you, that you would ever touch these girls in a sexual manner?

"A. I think it would be sickening, to be very frank with you.

"Q. I assume even more so because they're family members?

"A. Yes, sir.

"Q. As a matter of fact, you'd never do that to any family member, would you, touch them in a sexual manner?

34

"A. Name people, please.

"Q. You would never touch any family relative [other] than your wife in a sexual fashion, would you?

"A. No, I would not, sir.

"Q. And you've never done that?

"A. No, sir, I did not."

Other than a general remark by the defendant's mother (also in response to the prosecutor's cross-examination) that the defendant "would never do something like this," and the defendant's own testimony (on direct examination) that he loved his children and grandchildren, the testimony set forth above during cross-examination of the defendant was the only evidence whatsoever elicited during the defense case pertaining to any questionable conduct (or the denial thereof) between the defendant and any family members other than the complaining granddaughters.

Nevertheless, based on this testimony, the state was permitted to call two women as rebuttal witnesses who testified concerning prior sexual acts with the defendant, twenty-six years previously in one case and thirteen years previously in the other. The first witness, who was thirty-three years old, testified that when she was seven years old her mother was married to the defendant and the defendant moved in to live with them. However, before the witness could answer the prosecution's question as to whether she had experienced sexual contact with the defendant, defense counsel objected and moved for a mistrial, whereupon the following discussion was had at the bench between the prosecution, represented by Mr. Hanna, and counsel for the defendant, Mr. Koch:

"MR. KOCH: This witness has testified she was 7 years old, and she's now 30. If I can subtract, that's 23 years.

"MR. HANNA: She said she's 33, so it would be 26 years.

"MR. KOCH: The Court has got an order, I thought, that applied to both sides.

"THE COURT: *My order said in the State's case in chief.* Now, *I think the Defendant has put this issue before the Jury* by saying he would not touch and never did touch a family member, and *I think it goes to the issue of credibility, not to the issue of other like acts.* I'll note your objection on the record, but I'm going to permit her to testify." (Emphasis added.)

Upon the ruling of the trial court, the witness was then permitted to testify that on one occasion when she was seven years old the defendant had entered her bedroom where he had pulled down her panties and put his fingers inside her. She also testified there were similar instances of sexual contact by the defendant several times thereafter. Following this testimony, defense counsel moved to strike all of the witness's answers; however, his motion was denied.

The second rebuttal witness, who was twenty-nine years old, testified that the defendant was her uncle and that in the past she had visited with the defendant and his wife. The witness was then permitted to testify, over objection of defense counsel, that on one occasion when she was sixteen years old she stayed the evening at the defendant's home and that while in her room the defendant entered and placed his penis in her hand. She further testified that on that same occasion, the defendant then got on top of her and had sexual intercourse with her.

Regarding the trial court's decision to permit the foregoing rebuttal testimony in order to impeach the defendant's credibility, we first note Evid. R. 608(B), which provides:

"Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in

Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined had testified."

In *State* v. *Kamel* (1984), 12 Ohio St. 3d 306, 12 OBR 378, 466 N.E. 2d 860, the Supreme Court of Ohio applied Evid. R. 608(B) to a situation closely analogous to the instant case. In *Kamel, supra,* Dr. Mouhamed Kamel and his wife, Khaloud, were found guilty of involuntary manslaughter and child endangering stemming from the death of Maher ("Markey") Kamel, their two-year old son.

At trial, both Dr. Kamel and his wife were questioned on cross-examination as to "* * * whether either of them had ever punished their children by grabbing the child's ear and slapping him in the face." *Id.* at 310, 12 OBR at 382, 466 N.E. 2d at 864. Both denied ever punishing their children in the manner described. Dr. Kamel was further asked if he had ever meted out such punishment in a Sears, Roebuck & Co. department store. He answered "* * * that he was unable to recall such an instance." *Id.*

In rebuttal then, the state was permitted to introduce the testimony of H. Steven Russell who testified that:

"* * * three or four years prior to the trial, at a Sears store in Belden Village in Canton, he observed Dr. Kamel pull one of his children upward by the ear and viciously beat the boy's face with his free hand. According to Russell, Mrs. Kamel observed this take place but seemingly had no reaction." *Id.*

On appeal, the Stark County Court of Appeals held that the rebuttal testimony concerning Dr. Kamel slapping one of his children was inadmissible under Evid. R. 404(B), the court reasoning that the testimony "* * * was introduced by the state in order to prove the bad character of Dr. Kamel and to suggest that he had acted in conformity with the character by abusing Markey." *Kamel, supra,* at 310, 12 OBR at 382, 466 N.E. 2d at 864-865.

Before the Supreme Court, however, the state argued (as it does in the case before us), that the rebuttal testimony concerning the slapping incident was introduced only to impeach Dr. Kamel's credibility, specifically his denial that he ever struck his child in the fashion described on cross-examination, and that such testimony was admissible under Evid. R. 608(B).

Construing Evid. R. 608(B), the Supreme Court rejected the state's argument and held:

"The meaning of this rule is very clear. Other than the Evid. R. 609 exception for certain criminal convictions, a witness' credibility may not be impeached by extrinsic proof of specific instances of his conduct. Such conduct may be inquired into only by the instrinsic means of cross-examination within the guidelines set forth in Evid. R. 608(B).

"The rebuttal testimony of H. Steven Russell was extrinsic in nature. As such, even if we assume that such testimony did have probative value as to Dr. Kamel's credibility, we must find that it was inadmissible under Evid. R. 608(B)." *Kamel, supra,* at 311, 12 OBR at 383, 466 N.E. 2d at 865.

Similarly, the testimony of the state's rebuttal witnesses in the case before us clearly constituted "* * * extrinsic proof of specific instances * * *" of prior sexual conduct admitted for the sole purpose of impeaching the defendant's credibility. Therefore, pursuant to the ruling of the Ohio Supreme Court in *Kamel,*

*supra,* we have no choice but to find that the trial court erred in allowing this testimony.

We would further note that, in our view, had the defendant himself raised the issue of sexual contact with other family members (or his aversion thereto) in his case in chief, both cross-examination and rebuttal testimony concerning that contact might well have been permissible. In *Kamel, supra,* the Supreme Court held that rebuttal testimony concerning Mrs. Kamel's addiction to the drug Demerol was admissible in that the "* * * appellees themselves raised the subject of Mrs. Kamel's drug problem and made it an issue at trial." *Id.* The court concluded that the defense "* * * could not limit the subject to just those points of evidence which were in its favor. Rather, the topic became open to all relevant inquiry in the discretion of the trial court." *Id.* at 312, 12 OBR at 384, 466 N.E. 2d at 866. (But, see, *State* v. *Leuin* [1984], 11 Ohio St. 3d 172, 11 OBR 486, 464 N.E. 2d 552, where, although testimony was given by a witness on direct examination that she had never had sex with the appellee in the case, rebuttal testimony of specific instances of the witness having sex with the appellee was not admissible since the witness's testimony was on a purely collateral matter.)

However, as we noted earlier, we have carefully examined the entire trial transcript and simply cannot say that the defendant presented any testimony as part of his case which could be reasonably construed as having "opened the door" to the issue of his past sexual conduct. Rather, just as in *Kamel, supra,* the issue was first interjected into the case only upon cross-examination by the prosecutor. Accordingly, we are unable to distinguish this from the *Kamel* decision and are bound by the same application of Evid. R. 608 found therein.

Despite our conclusion as to the rebuttal *testimony,* we also wish to note that the state was not necessarily prohibited by Evid. R. 608(B) from *cross-examination* of the defendant concerning the prior instances of sexual contact involving the two rebuttal witnesses. Evid. R. 608(B) provides that a witness may, in the court's discretion, be questioned on cross-examination as to specific instances of a witness's conduct "* * * if clearly probative of truthfulness or untruthfulness * * *." However, the weight of authority is clear that the examiner is then "stuck" with the responses given by the witness on cross-examination. See *State* v. *Leuin, supra,* at 174, 11 OBR at 489, 464 N.E. 2d at 555, citing *State* v. *Gardner* (1979), 59 Ohio St. 2d 14, 19, 13 O.O. 3d 8, 11, 391 N.E. 2d 337, 341.

Proceeding further under the second assignment of error, the state next argues that the prior act testimony elicited on rebuttal was admissible under R.C. 2945.59 and Evid. R. 404(B) to show motive or intent. R.C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Evid. R. 404(B) states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in confor-

mity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

It must be noted at the outset that the rationale of "similar acts" was never seriously argued prior to or during the trial by the state and was never accepted by the court as a basis for admission of the rebuttal testimony. Rather, the final ruling of the trial court (which we quoted earlier) just prior to permitting this testimony was clearly based, not upon similar acts, but solely upon the rationale of impeachment of the defendant's credibility. As noted in the quoted portion above, this ruling was made on the stated reasoning of the trial court (which we have found to be erroneous under *Kamel, supra*), that the defendant had "opened the door" to this testimony merely by his answers on cross-examination. The jury instructions given by the trial court confirm this position, being directed entirely to impeachment of credibility without mention of the "similar acts" rationale.

Nevertheless, there is authority in Ohio for the proposition that evidence of acts of moral degeneracy and sexual perversion may be admissible as tending to show a "* * * motive or purpose for the commission of the offenses charged in the indictment." *State* v. *Harmon* (1958), 107 Ohio App. 268, 271, 8 O.O. 2d 201, 203, 158 N.E. 2d 406, 408-409. See, also, *State* v. *Shively* (App. 1960), 86 Ohio Law Abs. 71, 176 N.E. 2d 436.

The state directs our attention to *State* v. *Jackson* (1948), 82 Ohio App. 318, 38 O.O. 23, 81 N.E. 2d 546, where a defendant appealed his conviction on two counts of incest with his daughter. The defendant claimed that the court erred in allowing two other daughters to testify concerning his prior sexual conduct with them. The court held that the daughters' testimony was admissible, reasoning:

"It has long been recognized that, since specific types of emotion or passion in persons are likely to lead to the doing of specific acts, the presence of such emotion or passion in a person charged with crime prior to the time of the crime, has an evidential bearing as to the existence of the same emotion or passion at the time in question.

"* * *

"* * * The evidence is not at all admissible for the purpose of raising a presumption of guilt on the hypothesis that a man who commits one crime will probably commit another, but for the sole purpose of showing a passion, an emotion, a degeneracy, of exactly the same type prompting the commission of the offense laid in the indictment." *Id.* at 321-322, 38 O.O. at 24-25, 81 N.E. 2d at 548.

However, in *State* v. *Chapman* (1959), 111 Ohio App. 441, 15 O.O. 2d 19, 168 N.E. 2d 14, the defendant was found guilty of committing incest and rape with his fifteen-year-old daughter. There, the trial court allowed the victim's sister to testify concerning alleged sexual acts with the defendant which took place "* * * approximately eight years prior to the time complained of in the indictment * * *." *Id.* at 442, 15 O.O. 2d at 19, 168 N.E. 2d at 15.

The court of appeals reversed, ruling that the testimony concerning the prior acts was inadmissible:

"* * * These isolated acts which occurred eight years previous are too remote as to time to be admissible under the provisons [*sic*] of Section 2945.59 of the Revised Code * * *." *Id.*

Distinguishing *Jackson, supra,* the court in *Chapman, supra,* continued:

"The state cites as authority for the admissibility of such testimony the case of *State* v. *Jackson,* 82 Ohio App.,

318, where the court properly admitted the testimony of other daughters that the father had committed like offenses upon them because the testimony in that case showed a continuous course of conduct *and was not remote as to time,* as the court in the *Jackson case, supra,* states: 'The separate acts of incest by the defendant with his several daughters are "so related to the offense for which the defendant is on trial that they have a logical connection therewith and may reasonably disclose a motive." '

"Here the isolated acts do not show a course of conduct and since they occurred in an entirely different setting and time such evidence should not be permitted under the theory of that section. * * *'' (Emphasis added.) *Chapman, supra,* at 442, 15 O.O. 2d at 19-20, 168 N.E. 2d at 16. See, also, *State* v. *Schecter* (1974), 47 Ohio App. 2d 113, 119, 1 O.O. 3d 226, 230, 352 N.E. 2d 617, 623 (to be admissible under R.C. 2945.59, "* * * the acts must not be too remote and must be closely related in nature and time and place to the offense charged").

In the instant case, the two rebuttal witnesses who testified as to prior sexual acts with the defendant described acts which occurred approximately twenty-six and thirteen years prior to the time of trial, respectively. In addition, while there were some notable similarities in the alleged conduct, there was also a significant difference in that one of the witnesses alleged not just sexual contact, but also sexual intercourse.

However, even considering every possible nexus to the circumstances of this case, in the final analysis, we must conclude that the acts to which these two women testified are simply too remote to be admissible under either Evid. R. 404(B) or R.C. 2945.59. Accordingly, we find that the decision of the trial court to permit the testimony of the two rebuttal witnesses as to prior sexual acts with the defendant cannot be upheld as "similar acts" testimony under either R.C. 2945.59 or Evid. R. 404(B).

Having found that the rebuttal testimony of these two women was improperly admitted, we must next consider whether such error was harmless. To do so, we must be able to find that the error was harmless beyond a reasonable doubt. *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 403, 2 O.O. 2d 495, 502, 358 N.E. 2d 623, 631, vacated on other grounds (1978), 438 U.S. 910, citing *State* v. *Abrams* (1974), 39 Ohio St. 2d 53, 68 O.O. 2d 30, 313 N.E. 2d 823; *Chapman* v. *California* (1967), 386 U.S. 18. In *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 106, 2 O.O. 3d 249, 267, 357 N.E. 2d 1035, 1056, vacated on other grounds (1978), 438 U.S. 911, the Ohio Supreme Court stated:

"* * * Error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction."

After a careful review of the entire record, and in light of the highly inflammatory nature of this testimony (including, in particular, the fact that one of the witnesses accused the defendant of sexual conduct constituting a charge far more serious than the sexual contact charges for which he was on trial, the remoteness of the testimony, the fact that the defendant was left with absolutely no means of answering these allegations, and the fact that ironically, even if the defendant had been convicted of those prior acts, in all likelihood those convictions would not have been admissible for impeachment purposes under the ten-year limit of Evid. R. 609[B]), we cannot say in good conscience that there was "no reasonable possibility" that the testimony of these two women did not contribute to the defendant's con-

viction or that the error was harmless beyond a reasonable doubt. See *State v. Rahman* (1986), 23 Ohio St. 3d 146, 151, 23 OBR 315, 319, 492 N.E. 2d 401, 407.

Accordingly, we find the defendant's second assignment of error is well-taken.

### III

In the defendant's third and final assignment of error, he argues that remarks made by the prosecutor during trial to the effect that the defendant had rehearsed his testimony, that he was a liar, and that he was guilty were prejudicial and prevented him from having a fair trial.

During trial the prosecutor commented on the defendant's manner of answering questions and looking at the jury by saying: "Mr. Strobel, you seem to have that move nicely rehearsed." In view of the trial court's instruction to the jury that in judging the credibility of the witnesses and in weighing the evidence they were to consider "* * * the appearance of each witness upon the stand, [and] his or her manner of testifying * * *," we do not believe that the prosecutor's remarks prejudiced the jury.

Regarding the comments made by the prosecutor that the defendant was a liar and that he was guilty, we first note that the comments were made in the prosecutor's closing argument and were never objected to by defense counsel. Accordingly, unless the prosecutor's remarks constitute plain error, we need not consider whether these remarks prejudiced the defendant. See *Rahman, supra,* at 153, 23 OBR at 321, 492 N.E. 2d at 408.

In *Rahman, supra,* at 154, 23 OBR at 322, 492 N.E. 2d at 409, citing *State v. Maurer* (1984), 15 Ohio St. 3d 239, 269, 15 OBR 379, 404, 473 N.E. 2d 768, 794-795, certiorari denied (1985), 472 U.S. 1012, the Ohio Supreme Court reasoned that prosecutors have been accorded "* * * wide latitude in closing argument." The court continued at 154, 23 OBR at 322, 492 N.E. 2d at 409:

"* * * The effect of any prosecutorial misconduct ' "must be considered in the light of the whole case." ' *Id.* at 266. We must also remember that ' "[i]f every remark made by counsel outside of the testimony were grounds for a reversal, comparatively few verdicts would stand; since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation." ' *Id.* at 267, quoting *Dunlop* v. *United States* (1897), 165 U.S. 486, 498."

In light of the foregoing, we do not believe that the prosecutor's remarks in closing argument constitute reversible error and we therefore find that the defendant's third assignment of error is not well-taken.

However, in accordance with our ruling upon the second assignment of error, the judgment and sentence of the common pleas court is reversed and the matter is remanded to that court for a new trial.

*Judgment reversed and cause remanded.*

MILLER, P.J., and COLE, J., concur.