OPINION
Appellant Estella Sexton appeals a judgment of the Stark County Common Pleas Court convicting her of Complicity to Rape (R.C. 2907.02; R.C. 2923.03), Felonious Sexual Penetration (R.C.2907.12), two counts of Gross Sexual Imposition (R.C. 2907.05), Complicity to Gross Sexual Imposition (R.C. 2907.05; R.C.2923.03), and three counts of Endangering Children (R.C.2919.22(B)(2)):
ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY DENYING HER MOTION TO SEVER AS TO VICTIM IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION WHICH GUARANTEES THE RIGHT TO A FAIR TRIAL BEFORE AN IMPARTIAL TRIBUNAL.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY OVERRULING DEFENSE COUNSEL'S MOTIONS TO DISMISS JURORS NO. 230, 247 AND 248 FOR CAUSE IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION WHICH GUARANTEES THE RIGHT TO A FAIR TRIAL BEFORE AN IMPARTIAL TRIBUNAL.
 III. THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING EVIDENCE IN VIOLATION OF EVIDENCE RULE 404 AND 406 WHEREBY PREJUDICING THE APPELLANT AND VIOLATING HER DUE PROCESS RIGHT TO A FAIR TRIAL.
 IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN SUSTAINING THE PROSECUTOR'S MOTION TO AMEND THE INDICTMENT AND DENYING THE DEFENSE MOTION TO DISMISS THE SAME COUNT IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION WHICH GUARANTEES THE RIGHT TO A FAIR TRIAL.
 V. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY OVERRULING THE DEFENSE COUNSEL'S MOTIONS FOR MISTRIAL DUE TO PROSECUTOR MISCONDUCT AND FAILING TO SANCTION THE PROSECUTION FOR DISCOVERY VIOLATION THEREBY DENYING THE APPELLANT A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION.
 VI. THE CUMULATIVE ERROR IN THIS CASE NECESSITATES A NEW TRIAL.
Appellant; her husband, Eddie Sexton, Sr.; and their twelve children lived in a house on Caroline Street in Jackson Township. In April of 1992, Machelle, one of appellant's daughters, alleged that Eddie, Sr. had sexually molested the three oldest daughters: Machelle, Estella, Jr., and Sherry. As a result of these allegations, the Stark County Department of Human Services took temporary custody of the six minor children: Charles, James, Matthew, Christopher, Lana, and Kim.
Three of the children, Charles, Chris, and Kim, were returned to appellant's custody based on her promise that they would have no contact with Eddie. In December of 1992, appellant fled Ohio with the three children, and reunited with Eddie at a hotel in Kentucky. On January 14, 1994, appellant and Eddie were arrested in Hillsboro County, Florida. The three children were returned to the custody of DHS.
While living in Jackson Township, and in a camper in Hillsboro County, Florida, appellant and her husband perpetrated acts of sexual, physical, and mental abuse against all of the children. While living in Jackson Township, Kim, Lana, and Machelle were forced to participate in a wedding ceremony with their father. During the ceremony, Eddie engaged in a French kiss with the girls. Appellant was present, and took pictures of the ceremony.
In the camper in Florida, appellant and Eddie gave Kim and Chris little red pills and Nyquil to ingest every evening, despite the fact that neither had a cold. On one occasion, Kim did not ingest the medicine, and saw appellant fondling Chris' penis while he was asleep. On another occasion, everyone was ordered to leave the camper except for Kim, appellant and Eddie, Sr. Kim was ordered to remove her pants, and appellant and Eddie shaved Kim's legs. While they were shaving Kim, appellant fondled her private parts. When they were finished, Eddie placed the razor in a safe located in the camper, to be used on another occasion.
While living in Jackson Township, Lana and Machelle were forced to experience a similar shaving ritual. Lana was taken to the master bedroom for the purpose of punishment. Once inside the room, appellant held Lana down, while Eddie shaved her entire body with a razor. While shaving her, Eddie cut her leg, put the blood on her finger, and made her sign a paper, saying that she was selling her soul to the devil. Machelle was also taken into the master bedroom in the Jackson Township home and shaved. Appellant began the shaving, while Eddie finished the shaving. During the shaving, both appellant and Eddie fondled Machelle's vaginal area.
Chris received beatings from both appellant and Eddie. Eddie would beat Chris once or twice a week, while appellant guarded the door. The beatings would often leave bruises. Appellant and Eddie also punished Chris by having him stand against the wall for five to six hours, holding a penny against the wall with his nose. During this punishment, Chris was not permitted to go to the bathroom. At age twelve, Chris was forced to participate in weekend parties involving the family members, in which he was given beer to drink.
Machelle suffered numerous beatings by Eddie, while appellant held her down. As a result of the beatings, Machelle was not permitted to go to school, because appellant feared that someone would see the bruises. On one occasion, appellant and Eddie forced Machelle to sleep in a closet, which had been sprayed with roach spray. Appellant sexually abused Machelle by fondling her vaginal area during the shaving ritual, and by placing her fingers in Machelle's anal cavity on several occasions, claiming that she was searching for worms. Appellant also fondled Machelle's breasts, claiming that she was checking for breast cancer.
At the Jackson Township house, Kim was sleeping in the master bedroom between appellant and Eddie, Sr. Appellant fondled Kim's vaginal area over her clothing.
Appellant was indicted by the Stark County Grand Jury with two counts of Rape, four counts of Complicity to Rape, two counts of Felonious Sexual Penetration, one count of Complicity to Felonious Sexual Penetration, seven counts of Gross Sexual Imposition, five counts of Complicity to Gross Sexual Imposition, one count of Sexual Battery, two counts of Complicity to Sexual Battery, and six counts of Child Endangering. Appellant entered a plea of not guilty.
Prior to trial, appellant filed a motion to sever, requesting that the court sever the case to eight separate trials: one for each victim. Following a hearing, the court granted the motion in part, by severing the case into two trials. The first trial dealt with ten counts, and four victims. The State dismissed two of the ten counts, leaving one count of Complicity to Rape, one count of Felonious Sexual Penetration, two counts of Gross Sexual Imposition, two counts of Complicity to Gross Sexual Imposition, and three counts of Child Endangering, against four victims: Chris, Lana, Machelle, and Kim. The case proceeded to jury trial.
Appellant testified at trial that she never physically or sexually abused her children. She claimed that when Eddie would take the children into the master bedroom to punish them, she would attempt to break down the door to rescue the children. She denied being involved in the shaving of any of the daughters, and claimed that the wedding ceremony was not meant to be real, but was a game. Appellant claimed that she was a victim of both physical and sexual abuse perpetrated by Eddie.
Appellant was found guilty of all eight counts. She was sentenced to an aggregate term of life imprisonment, plus eight and one-half to twenty-five years incarceration. Appellant appealed this judgment in Case No. 1996CA00306.
Subsequently, appellant and the State of Ohio entered into a negotiated plea on the remaining counts. As part of the negotiated plea, appellant pleaded no contest to thirteen counts: two counts of Rape, three counts of Complicity to Rape, one count of Complicity to Felonious Sexual Penetration, two counts of Gross Sexual Imposition, two counts of Complicity to Gross Sexual Imposition, and three counts of Child Endangering. Appellant was convicted, and sentenced to an aggregate term of imprisonment of thirteen to twenty-five years. The sentence was ordered to run concurrently with the sentences resulting from the jury trial convictions. Appellant appealed this judgment in Case No. 1996CA00367. However, appellant has assigned no error to the convictions resulting from the plea of no contest.
 I.
Appellant argues that the trial court abused its discretion in failing to sever the case into eight separate trials: one for each victim. Specifically, appellant claims that the failure to sever violated the Ohio Rape Shield statute as to the charge of Complicity to Rape, bolstered the evidence from one victim to the next, and made it complicated for the jury to separate victims and incidents.
Pursuant to Crim.R. 8 (A), offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct. The burden is upon the defendant to either affirmatively demonstrate before trial that his rights would be prejudiced by joinder, or to show at the close of the State's case, or at the conclusion of all the evidence, that his rights actually have been prejudiced by the joinder. State vs. Strobel (1988), 51 Ohio App.3d 31, 33. When a defendant claims that he was prejudiced by joinder by multiple offenses, the court must determine: (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. State vs. Schaim (1992), 65 Ohio St.3d 51, 59. If the evidence of other crimes would be admissible at separate trials, any prejudice that might result from the jury hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials. Id.
Ohio's Rape Shield Law, R.C. 2907.02(D) and 2907.05(D), permits the introduction of evidence of other sexual activity by a defendant when the evidence is admissible pursuant to R.C.2945.59, but only to the extent the court finds that the evidence is material to a fact at issue in the case, and that its inflammatory or prejudicial nature does not outweigh its probative value.
R.C. 2945.59 provides that in any criminal case in which the defendant's motive or intent, the absence of mistake or accident, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident, or the defendant's scheme, plan, or system may be proved, whether they are contemporaneous with or prior or subsequent thereto, not withstanding that such proof may tend to show the commission of another crime by the defendant.
Other act evidence offered to show a scheme, plan, or system is relevant in two situations. First, the evidence is relevant if it forms part of the immediate background of the alleged act which serves the foundation of the crime charged. State vs. Curry
(1975), 43 Ohio St.2d 66, 73. Second, the evidence may be admissible to prove the identity of the perpetrator. Id.
Therefore, evidence of physical, emotional, and verbal abuse which transpires in a home between the defendant and his children, may be relevant and probative of a method of control used to force sex upon his son, thus being inextricably related to the charge of Rape. State vs. Martin (December 6, 1990), Cuyahoga App. No. 58648, unreported.
As in Martin, the evidence of the crimes against Kim, Chris, and Machelle would have been admissible in the Complicity to Rape trial against Lana, as the evidence forms part of the immediate background of the alleged act of rape, serving as a foundation of the charged crime. As in Martin, the evidence was probative of the methods of control used by appellant and Eddie, which culminated in the rape of Lana.
The pattern of escalating abuse was remarkably similar among the four children involved in the instant trial. The abuse began as physical and psychological. The children's clothes would be taken off, and they would be whipped by Eddie. Appellant either guarded the door or held the children down. Appellant participated in beating Chris with a belt. The children were also forced to participate in a "kissing game" with their parents. Eddie or appellant would put a Hershey's Kiss in his or her mouth, and the children would be required to remove the candy using their tongues.
When the girls began to grow up, they were forced to participate in a wedding ceremony in which they married their father. After the wedding, they would participate in the shaving ritual, during which appellant and Eddie would shave their entire bodies, while fondling their genital areas. Punishment would than escalate into sexual abuse. Appellant would hold the children down, while Eddie and/or appellant would engage in sexual activity with the children. As to Lana, the sexual activity reached the extent of sexual intercourse with Eddie, while appellant told her that this was "for punishment." Therefore, as in Martin, supra, the evidence of other acts perpetrated by appellant and Eddie was relevant to and probative of the method of control used by appellant and Eddie to force sexual, physical, and/or psychological abuse on the children, and to prevent the children from revealing the abuse.
Even if the evidence would not have been admissible in separate trials as other act evidence, the evidence presented to the jury was simple and distinct as to each victim. Further, the trial court specifically instructed the jury that the charges were separate and distinct matters, were to be considered separately, and each count must be uninfluenced by the jury's verdict as to any other count.
Finally, although appellant now argues that the evidence concerning the other children unfairly prejudiced the charge of Complicity to Rape, which carried the sentence of life imprisonment, appellant did not renew the motion to sever, and made no effort either at the close of the State's case, or at the conclusion of all the evidence, to demonstrate that her rights actually had been prejudiced at trial due to the joinder of the four victims. If a motion to sever is not renewed, it is waived. See State vs. Strobel, supra.
The first Assignment of Error is overruled.
 II.
Appellant claims that the court abused it discretion when it overruled her motion to challenge for cause Jurors No. 230, 247, and 248.
We first note that of these three, only Juror No. 230 was one of the twelve jurors to deliberate. Jurors No. 247 and 248 were alternates, who were not seated on the case.
Even if the trial court erroneously overrules a challenge for cause, the error is prejudicial only if the accused eliminates the challenge with a peremptory challenge, and exhausts his peremptory challenges before the full jury is seated. State vs. Tyler
(1990), 50 Ohio St.3d 24, 30-31. In the instant case, appellant failed to exhaust her peremptory challenges. Therefore, appellant has not demonstrated prejudice.
The second Assignment of Error is overruled.
 III.
Appellant argues that the court erred in admitting evidence that appellant and Eddie shaved Lana's entire body as punishment, as appellant was not charged with Child Endangering in which Lana was the victim.[1]
Both R.C. 2945.59 and Evid.R. 404 (B) contemplate acts which may or may not be similar to the crime at issue. State vs. Broom
(1988), 40 Ohio St.3d 277, paragraph one of the syllabus, cert.denied, (1989), 490 U.S. 1075. If the other act does tend to show, by substantial proof, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, then evidence of the other act may be admissible. Id. Other act evidence that illustrates a scheme, plan, or system, is relevant if it forms part of the immediate background of the alleged act, which serves as a foundation of the charged crime.State vs. Curry (1975), 43 Ohio St.2d 66, 73. Further, as noted in Martin, supra, other act evidence of physical, emotional, and verbal abuse transpiring between a defendant and his children, is relevant to and probative of the method of control used by the defendant to force sex upon the victim, the defendant's son.
The evidence concerning appellant and Eddie shaving Lana's entire body as a form of punishment was admissible other act evidence indicating a common scheme or plan involving a "shaving ritual" of the Sexton daughters.
Machelle testified that appellant and Eddie perpetrated the shaving ritual because they did not want the girls to grow up. Machelle testified that she was taken to the master bedroom by appellant and Eddie. Inside the bedroom, appellant and Eddie used a razor to shave her body, and during the shaving, appellant fondled Machelle's genital area.
Kim Sexton was forced to endure an almost identical shaving ritual. Kim was ordered to remove her pants while in the camper in Florida. Appellant and Eddie shaved Kim's legs from her ankle to the top of her leg. While they were shaving Kim, appellant fondled Kim's genital area. When they finished, Eddie placed the razor in a safe in the camper, indicating that they were putting the razor in a safe place until the next time.
Lana's testimony, although not charged in the instant case, was further evidence that appellant and Eddie used the shaving ritual as a common scheme of abuse. Lana stated that she was familiar with the ritual as a form of punishment. She testified that she was taken to the master bedroom by Eddie and appellant, and appellant held her down while Eddie shaved her entire body.
Appellant testified that there was no shaving ritual. She testified that the only time anyone "got shaved" was when Kimberly and Lana took her Lady Sunbeam and thought they were going to shave their legs. She testified that she took the razor aware from them, and bought them disposable razors. Therefore, at issue in the trial was whether appellant perpetrated a shaving ritual as a means of abuse. The common scheme was always perpetrated by appellant and Eddie when they were alone with one of the children. The ritual involved taking the child to the bedroom and shaving the child's body.
Further, the court prevented this evidence from being inappropriately used by giving a cautionary instruction:
. . .
 Evidence was received by Lana Sexton being shaved by the defendant and her husband, Lana Sexton being included in a marriage ceremony with her father. Even though the defendant is charged with complicity to rape concerning Lana Sexton, this evidence was received about the commission of an act other than with the offense with which the defendant is charged in the trial. That evidence is received only for a limited purpose. If it was not received and you may not consider it to prove the character of the defendant nor to show that she acted in accordance with that character.
 If you find that the evidence of the other acts are true and the defendant committed them, you may consider that the evidence that evidence only for the purpose of deciding whether it proves that the defendant used a scheme, plan or a system. That evidence cannot be considered for any other purpose.
. . .
Tr. (V), 235-36.
The trial court did not abuse its discretion in allowing the State to present the evidence, and the trial court insured that the jury properly used the evidence by giving a limiting instruction.
The third Assignment of Error is overruled.
 IV.
Appellant argues that the court erred in permitting the State to amend the indictment, rather than dismissing Count Seven as requested by appellant. Count Seven originally alleged that appellant committed the criminal offense of Felonious Sexual Penetration against Machelle, as a continuous course of conduct from June 21, 1988 until February 11, 1992. The court granted the State's motion to amend the charge to allege a course of conduct beginning September 27, 1989, rather than June 21, 1988.
Crim.R. 70 provides that at any time before, during, or after a trial, the court may amend the indictment in respect to any defect, imperfection, or omission in form or substance, or if any variance with the evidence, provided no change is made in the name or identity of the crime charged. An indictment involving child sexual abuse need not specify exact dates and times of the alleged offenses. State vs. Daniels (1994), 97 Ohio App.3d 548, 557-58. In such cases, the State must set forth a time frame in the indictment, and charge the accused with offenses which reasonably fall within that period. State vs. Barnecut (1988), 44 Ohio App.3d 149,151.
Appellant argues that changing the beginning date of the alleged course of conduct from June 21, 1988 to September 27, 1989, impermissibly changed the nature and identity of the crime. Prior to September 27, 1989, Felonious Sexual Penetration required that no person, without privilege to do so, shall insert any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender. Beginning on September 27, 1989, the statute was amended to include the insertion of any part of the body. Appellant claims that because a finger does not fit the definition of an object, an offender who digitally penetrated a victim prior to September 27, 1989, could not be found guilty of Felonious Sexual Penetration. As appellant allegedly digitally penetrated Machelle, appellant argues that changing the beginning date of the course of conduct changed the identity of the crime.
In State vs. Ritchie (April 2, 1997), Lorain App. No. 95CA006211, unreported, the defendant was charged with Felonious Sexual Penetration for conduct occurring from June 1, 1989 to June 30, 1992. The court allowed the prosecutor to amend the beginning date to September 27, 1989, to coincide with the amendment of the Felonious Sexual Penetration statute. The court held that the trial court did not err, as in the original indictment, the majority of the time range occurred after the effective date of the statute's amendment. Therefore, the defendant had ample notice that his alleged conduct constituted Felonious Sexual Penetration.
In the instant case, the majority of the time range as originally charged in the indictment occurred after the amendment of the statute. Therefore, amending the beginning date from June 21, 1988 to September 27, 1989, did not change the name or identity of the crime charged. Appellant had ample notice that her alleged conduct constituted Felonious Sexual Penetration pursuant to the amendment.
The fourth Assignment of Error is overruled.
 V.
Appellant claims prosecutorial misconduct in: (1) failing to provide addresses of the victims and failing to make the victims available for interview by appellant's counsel; (2) referring to appellant's trial counsel as an employee of the Public Defender's Office; (3) improperly questioning Dr. Robin Tener; (4) ridiculing and demeaning appellant during cross-examination; and, (5) making improper and prejudicial remarks during closing argument. The test for prosecutorial misconduct is whether the conduct was so improper as to prejudicially affect the substantial rights of the defendant. State vs. Lott (1990), 51 Ohio St.3d 160, 165.
Discovery: because of the delicate nature of the case, the court agreed that the new adoptive names of the children and their new addresses should remain confidential. However, at the August 5, 1996 pre-trial, the court ordered that the children be made available to appellant's trial counsel. It was established at this pretrial that counsel had a previous opportunity to speak with all of the children, except Machelle, who was an adult on the date of trial. Further, the guardian ad litem of the children represented that he offered to make the children available to defense counsel in his office for further interviews, but appellant's counsel had failed to request such interview. Further, following the pretrial, all four children were interviewed by appellant's investigator.
Appellant has not demonstrated that she was prejudiced by the failure of the State to provide the names and addresses of the children. Appellant had the opportunity to interview the children on two separate occasions about the allegations. Further, the guardian had offered to make the children available to defense counsel.
Comment regarding the Public Defender's Office: Appellant has not demonstrated that the prosecutor acted improperly by referring to counsel as working for the Public Defender's Office, nor has appellant demonstrated any prejudice from the reference.
Questioning of Dr. Robin Tener: The prosecutor asked Dr. Robin Tener, a clinical psychologist who specializes in the field of child abuse, whether the presence of the perpetrator in the courtroom would affect the demeanor of Christopher Sexton during his testimony. The court sustained an objection to the question, but overruled a motion for mistrial.
Appellant has not demonstrated how the question affected her right to a fair trial. The question was an isolated incident in a lengthy trial. The court sustained appellant's objection. The question does not rise to the level of requiring a mistrial.
Cross-examination of appellant: During cross-examination of appellant, the prosecutor asked appellant if she knew when Machelle's birthday was, and how old Machelle was when the family moved into the Jackson Township residence. Appellant initially stated that she could not recall, and subsequently gave two different dates as to the birthday. The court permitted questions concerning whether appellant knew how old Machelle was when the family moved to Jackson Township, but instructed the prosecutor to ask her questions civilly and politely. Tr. (V), 94-95.
Because we are limited to a cold record on appeal, we cannot determine the tone with which the questions were asked. Therefore, we must assume that the trial court's instruction to the prosecutor to ask her questions politely was sufficient to rectify the problem. Appellant has not demonstrated that any misconduct rose to the level of denying her a fair trial.
Closing argument: Appellant claimed that the following statement by the prosecutor in closing argument constituted misconduct:
 MR. BAUMOEL: . . . You know that it had happened earlier at an age between eleven and thirteen from Michelle Sexton's testimony, so twice we know from the defendant's own testimony she's going to throw out the excuse of the worms, but ladies and gentlemen, we have the burden of proof, but if they're going to present a defense in this case, if they're going to say well, it was really worms, we really had a doctor there —
 MR. KAPLANIS: Objection, your honor, to where this is going.
THE COURT: Overruled.
MR. KAPLANIS: We do not have a burden here.
THE COURT: It's closing argument.
 MR. BAUMOEL: It's exactly what I said, they don't have the burden, but if they're going to present evidence, nothing is stopping them from presenting credible evidence.
MR. KAPLANIS: Objection, your honor.
 THE COURT: Overruled; this is closing argument. . . . Tr. (V), 190-191.
The prosecutor's reference concerned appellant's testimony that she did not digitally penetrate Machelle's anal cavity, but that she looked for worms, and Machelle was subsequently diagnosed by a doctor with pin worms. The prosecutor's argument was not improper, as he attacked the credibility of the evidence. However, the prosecutor made it clear that he was not shifting the burden of proof to appellant.
Appellant has not demonstrated that she was denied a fair trial by any improper conduct by the prosecutor.
The fifth Assignment of Error is overruled.
 VI.
Appellant claims that the cumulative effect of error in this case necessitates a new trial. Errors which are not prejudicial cannot become prejudicial by sheer weight of numbers. State vs.Hill (1996), 75 Ohio St.3d 195, 212.
As we have found no prejudicial error in the instant case, the sixth Assignment of Error is overruled.
The judgment of the Stark County Common Pleas Court is affirmed.
Reader, J., Gwin, P. J. and Hoffman, J. concur.
[1] Appellant had previously been convicted of one count of Child Endangering and one count of Gross Sexual Imposition toward Lana.