DECISION AND JUDGMENT ENTRY
Defendant-Appellant Ronald L. Docie appeals from the judgment of the Athens County Municipal Court, which found him guilty of public indecency, a fourth-degree misdemeanor, in violation of Athens City Ordinance 13.05.05(A). Specifically, appellant argues that the trial court erred by admitting evidence of certain "other acts" in violation of R.C. 2945.59. Appellant also argues that the trial court erred in finding that the state's introduction of evidence, excluded per a ruling on a motion in limine, did not amount to misconduct by the prosecutor. We find appellant's assignments of error to be without merit and affirm the judgment of the trial court.
 STATEMENT OF THE CASE AND FACTS
On February 29, 2000, a complaint was filed against appellant with the Athens County Municipal Court, alleging that on or about November 27, 1999, appellant committed the crime of public indecency, in violation of Athens City Ordinance 13.05.05(A)(1).
The complaint stems from allegations that, on the morning of November 27, 1999, appellant, while in his home, came downstairs in a bath towel, sat on the stairs in his living room, and fondled or touched his genitals in front of several minor boys, including his son. The boys were at appellant's house, attending an overnight party to celebrate the fourteenth birthday of appellant's son. The party had begun the previous evening.
On March 7, 2000, appellant entered a written plea of not guilty and a jury demand.
On April 24, 2000, appellant filed a motion in limine, seeking to have certain evidence excluded. In his memorandum in support of that motion, appellant argued that any evidence going toward allegations that on the night before the incident in question he showed an NC-17 rated film, had discussions of a sexual nature, and spoke to his son behind closed doors, was inadmissible pursuant to R.C. 2945.59, Evid.R. 401, 402, and 403. The record is devoid of a journal entry reflecting any action taken on this motion by the trial court.
During the pre-trial conference, appellant waived his right to a jury trial, and on June 18, 2000, a bench trial began. Following the presentation of the state's case, the trial was adjourned. Following a continuance of nearly two months, the trial resumed on August 23, 2000.
During the course of the trial, counsel and the trial court made several references to the prior evidentiary ruling, and several exchanges occurred that are relevant to this appeal.
The first exchange relevant to this appeal occurred during the state's re-direct examination of Jeff Gura, an investigator for the City of Athens Police Department. On cross-examination, appellant asked about a statement given by appellant's son concerning the morning of November 27, 1999. Appellant elicited testimony, which established that, of the four boys present the morning in question, only two made statements that they had seen anything incriminating. Gura also testified that the statement of appellant's son contradicted the statements of the two boys who said appellant had exposed himself to them. The following line of questioning by the state transpired:
 Q. * * *. Now you said that you did interview Taylor Docie [appellant's son]. Is that right?
A. Correct. I was there.
 Q. When you interviewed Taylor Docie did he say anything about movies they had seen the night before?
 BY MR. HODSON: Objection, your Honor. And I move for a mistrial. We have had a prior court ruling on this.
 BY THE JUDGE: The question was about [the] movie that we decided we weren't going to discuss.
BY MR. HODSON: Correct.
 BY MS. ELIASON: We aren't discussing the movie. We're discussing the allegation here that he denied that anything occurred.
 BY MR. HODSON: Your honor, we are referring to that morning. I object whole heartedly [sic] and move for a mistrial. It's prosecutorial misconduct to bring up something that we have a prior ruling about.
 BY THE JUDGE: It's already, as far as the trier of fact, he's already had some discussion with that. The objection will be sustained on the grounds of relevance. The Court will try this particular case. The issue as to whether or not the statement by Lee happens to include other incidents, right now at this point I think we're playing a game of semantics. If it's going to be on this charge in terms of the indecent exposure on or about 10:00 on Saturday morning, that's what we're trying.
 Q. So you[r] statement here today is that Taylor Docie denied anything happened?
A. Correct.
Q. At 10:00 that morning.
A. Nothing that he saw.
 Q. Did he deny anything else that you subsequently determined to be true?
 BY MR. HODSON: Objection, your Honor, unless it has to do with that morning.
 BY THE JUDGE: Well, that I'm not so clear about. The question is did he deny anything else during the initial interview?
 BY MS. ELIASON: Yes. That Officer Gura subsequently determined to be true.
BY MR. HODSON: It's irrelevant.
 BY THE JUDGE: Well it may go to credibility. * * * Please repeat the question for Officer Gura.
 Q. Officer Gura, in looking at your report when you interviewed Taylor Docie did he deny anything that you later determined had been true?
A. Yes he did.
Q. We'll have to leave it at that.
 BY THE JUDGE: Oh, we don't have to leave it at that. Go ahead, Ms. Eliason.
Q. What was it?
BY MR. HODSON: Objection, your Honor.
BY THE JUDGE: Overruled.
A. It was a video that they had been watching the night before.
 Appellant testified in his own defense, and when he was cross-examined by the state, the following line of questioning took place concerning a prior incident when one of the boys present the morning in question, Lee Palmer, saw appellant nude.
 Q. Okay. Now, do you recall a prior incident where a guest in your house saw you nude.
 BY MR. HODSON: Your honor, I'm going to object. It's irrelevant. * * *.
* * *
 BY THE JUDGE: Well, the defense here, or at least as I understand part of the defense, is that if it occurred it was an accidental type thing. I think Ms. Eliason's question is designed to refute that.
* * *
BY MS. ELIASON: That's right, your Honor.
BY THE JUDGE: The Court will allow it.
* * *
 Q. Had there been an occasion about one year before where Lee Palmer saw you nude?
A. One year before what?
Q. One year before last November.
A. No, I don't think that's accurate.
Q. Okay. Was there a different time that Lee Palmer saw you nude?
 A. I think it was longer ago than that. I thought it was a couple years.
 Appellant then described the incident inquired about, stating that he was walking from his bathroom to his bedroom and did not know that Palmer was with appellant's son in his son's bedroom. According to appellant's testimony, Palmer saw him walk from the bathroom to the bedroom in the nude.
 Finally, the state called Palmer to testify as a rebuttal witness. During his direct examination, the following exchange occurred.
 Q. * * *. And had there been an incident about a year or two before where you did see Ron Docie's private parts?
A. Yes.
 BY MR. HODSON: Again, your Honor, for the record note my objection to this line of questioning.
BY THE JUDGE: Objection overruled.
Q. And could you tell us about that?
 A. Taylor and I were sleeping out in the, in his side yard in a tent and in the morning he called us up to his room and was totally naked on the bed. And then I left. And he said that like we were all men and everything.
Q. Did he have an erection?
A. Yes.
 At the conclusion of the trial, the trial court found appellant guilty and sentenced him to thirty days in jail and a $250 fine. Appellant's thirty-day sentence and $150 of his fine were suspended.
Appellant timely filed his notice of appeal on September 21, 2000, and presents the following assignments of error for our review.
 FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN FINDING "OTHER ACTS" EVIDENCE ADMISSIBLE.
 SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN FINDING THAT THE STATE'S INTRODUCTION OF EXCLUDED EVIDENCE DID NOT AMOUNT TO PROSECUTORIAL MISCONDUCT.
 ANALYSIS
Preliminarily, we must address the lack of a journal entry reflecting the trial court's ruling on appellant's motion in limine. Several of appellant's arguments are based on the trial court's supposed ruling, granting appellant's motion and the state's alleged violations of that ruling. However, the record contains no journal entry from the trial court discussing its ruling or the contents of that ruling.
In Wray v. Herrell (Feb. 24, 1994), Lawrence App. No. 93CA08, unreported, this Court stated that "A decision on a motion in limine is preliminary and reflects anticipatory treatment of evidentiary issues."Wray, supra, citing State v. Grubb (1986), 28 Ohio St.3d 199,503 N.E.2d 142. We further stated in Wray that "A court speaks only through its journal entry and not by oral pronouncement." Wray, supra, citing In re Adoption of Gibson (1986), 23 Ohio St.3d 170, 173,492 N.E.2d 146, fn. 3; Schenley v. Kauth (1953), 160 Ohio St. 109,113 N.E.2d 625, paragraph one of the syllabus. We also stated that "An appellate court will not consider matters which, though discussed in the courtroom, are not carried over into the court's judgment entry." Wray,supra, citing Snouffer v. Snouffer (1993), 87 Ohio App.3d 89,62 N.E.2d 879; Howard v. Wills (1991), 77 Ohio App.3d 133, 140,601 N.E.2d 515, fn. 5.
Also, in Grubb, the Supreme Court of Ohio held that,
[A] motion in limine, if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue. In virtually all circumstances finality does not attach when the motion is granted. Therefore, should circumstances subsequently develop at trial, the trial court is certainly at liberty "* * * to consider the admissibility of the disputed evidence in its actual context."
State v. Grubb, 28 Ohio St.3d at 201-202, 503 N.E.2d at 145, quotingState v. White (1982), 6 Ohio App.3d 1, 4, 451 N.E.2d 533, 537. Therefore, even when a trial court grants a motion in limine, it is within its discretion to revisit that evidence at trial and change its ruling, should the circumstances merit such a change. See id.
With these legal concepts in place, we will address appellant's assignments of error as if the trial court had denied appellant's motion in limine.
 I.
In his First Assignment of Error, appellant argues that several rulings by the trial court on the admissibility of certain evidence constitute prejudicial error. Specifically, appellant argues that the trial court committed reversible error by admitting certain "other acts" evidence, in violation of Evid.R. 404 and R.C. 2945.59, pertaining to: the showing of an NC-17 video the night prior to the incident that gave rise to appellant's criminal charges and a prior instance where appellant was viewed naked by one of the boys present at his son's birthday party.
Initially, we note that appellant preserved each assigned error herein discussed by properly objecting in the trial court when the disputed evidence was elicited from a witness.
"Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Lowe
(1994), 69 Ohio St.3d 527, 634 N.E.2d 616, citing State v. Broom (1988),40 Ohio St.3d 277, 282-283, 533 N.E.2d 682, 690-691; see, also, Evid.R. 404(B); R.C. 2945.59. The common law rule with respect to "other acts" evidence was codified in R.C. 2945.59 and Evid.R. 404(B), which are construed against admissibility. See State v. Burson (1974),38 Ohio St.2d 157, 311 N.E.2d 526; State v. Hector (1969),19 Ohio St.2d 167, 174-175, 249 N.E.2d 912, 916-917. Evid.R. 404(B) provides that
Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B).
Similarly, R.C. 2945.59 provides that
In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant. R.C.2945.59.
Under these sections, evidence of other acts is admissible if it tends to prove a specific element of the crime charged or one of the matters specifically enumerated in the statute. See State v. Curry (1975),43 Ohio St.2d 66, 330 N.E.2d 720; State v. Cartee (Dec. 8, 1992), Vinton App. No. 468, unreported. Even if the "other acts" evidence is relevant pursuant to Evid.R. 401, it still must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).
The appropriate standard of review, which we must apply, is abuse of discretion. See Cartee, supra, citing Gianelli, Ohio Evidence Manual (1991) 22, Section 403.07; Renfro v. Black (1990), 52 Ohio St.3d 27,556 N.E.2d 150; State v. Rahman (1986), 23 Ohio St.3d 146, 492 N.E.2d 401. Absent a showing that the trial court acted unreasonably, arbitrarily, or unconscionably, we will affirm its ruling. See State v. Apanovitch
(1987), 33 Ohio St.3d 19, 22, 514 N.E.2d 394, 398; Cartee, supra; Statev. Cutshaw (Mar. 6, 1992), Washington App. No. 91CA8, unreported. However, "the improper use of other-acts evidence necessitates reversal when there is a `reasonable possibility that the testimony contributed to the accused's conviction.'" State v. Treesh (2001), 90 Ohio St.3d 460,483, 739 N.E.2d 749, 773, quoting State v. Lytle (1976), 48 Ohio St.2d 391,358 N.E.2d 623, paragraph three of the syllabus, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135.
 A.
Appellant first argues that the trial court erred by permitting the state to question the investigating officer, Gura, regarding statements made by appellant's son about movies he and the other boys had viewed the night before the incident in question. During cross-examination, appellant asked Gura about an interview Gura had conducted with appellant's son. Appellant asked Gura whether appellant's son confirmed the stories of the two boys who stated that appellant had exposed himself to them. In response to the question, Gura stated that "[Appellant's son] denied a lot of the things that were alleged to have happened and some of the things that did happen."
During re-direct, the state inquired about whether appellant's son had made any statements concerning "movies they had seen the night before." Following appellant's objection and a sidebar, the trial court sustained the objection on the ground that it was irrelevant. The state then inquired of Gura whether appellant's son had denied anything that Gura subsequently determined to be true. Appellant again objected, but the trial court determined that the question went to the credibility of appellant's son and overruled the objection.
When appellant presented his case-in-chief, his son testified that he had misled investigators concerning the events of the night before, but that he was truthful concerning the morning of the incident. At no time during the guilt phase of the trial was the nature of the videos mentioned.
The purpose behind eliciting testimony about the videos was to show that appellant's son had denied that the videos were shown the night before, when they had been shown, and then denied that appellant had exposed himself the following morning. At issue was the credibility of appellant's son. The state argued that since appellant's son lied about the videos in an attempt to protect his father, he may not be telling the truth in his statement and testimony concerning the morning in question.
Under these circumstances, this evidence was not being presented as evidence of "other acts" to improperly show that appellant, on the morning of the incident, acted in conformity with some negative character trait. Evid.R. 404(A). The testimony sought concerned the son's act of lying to the investigating officer, not appellant's alleged act of showing the videos at the party. The evidence was being introduced to cast doubt on the truthfulness of the statement given by appellant's son that nothing happened on the morning of the incident.
The state argues that per Evid.R. 806(A), the prosecution is allowed to elicit such testimony to attack the credibility of appellant's son. However, Evid.R. 806(A), requires on its face that a hearsay statement be admitted before the credibility of the declarant of the statement may be attacked. Evid.R. 806(A); see, also, State v. Kurtz (Oct. 2, 1999), Butler App. No. CA95-01-020, unreported.
In the case sub judice, no hearsay statement with appellant's son as declarant was admitted prior to this credibility attack. As such, the trial court erred by allowing the prosecution to inquire into the credibility of appellant's son during the re-direct of Gura, pursuant to Evid.R. 806(A). However, subsequent events at trial render this to be harmless error.
The appropriate time to raise this issue would have been during the cross-examination of appellant's son, and the state did so. See Evid.R. 611(B). During the cross-examination of appellant's son, the state mounted an attack on the credibility of appellant's son, and did so in essentially the same manner as it did with Gura. Because this evidence was properly admitted during the cross-examination of appellant's son, appellant has suffered no prejudice from the improper Gura testimony. Therefore, the trial court's error did not affect appellant's substantial rights, resulting in harmless error on this issue. See Crim.R. 52(A);State v. Williams (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323, paragraph six of the syllabus (holding that a trial court's error in admitting evidence is harmless if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt).
We also note that appellant has not shown that this testimony was relied on by the trial court in its judgment. In a criminal trial to the bench, there is a presumption that the trial court "considered only relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." State v. White (1968),15 Ohio St.2d 146, 151, 239 N.E.2d 65, 70; see, also, State v. Post
(1987), 32 Ohio St.3d 380, 513 N.E.2d 754; State v. Filiaggi (1999),86 Ohio St.3d 230, 714 N.E.2d 867. A review of the trial court's judgment reveals no reference to the evidence concerning the videos which appellant deems objectionable.
 B.
Appellant next argues that it was prejudicial error for the trial court to allow the prosecution to question appellant concerning an alleged prior incident when he was viewed naked by Palmer.Appellant relies on the case of State v. Crawford (1969), 17 Ohio App.2d 141, 224 N.E.2d 774, in arguing that the state's questioning of appellant regarding a prior incident where he allegedly exposed himself to Palmer was prejudicial error. In Crawford, the First District Court of Appeals held that asking a defendant whether he or she had been indicted on other charges was prejudicial error, where the prosecutor fails to produce evidence of a conviction on those charges. See, also, Wagner v. State (1926),115 Ohio St. 136, 152 N.E. 28.
However, Crawford is distinguishable from the present case because it specifically dealt with prior criminal indictments for which a defendant was not tried or convicted. In the case sub judice, appellant was questioned about a prior incident where he was viewed naked by someone other than a family member, not whether he was indicted for that prior act.
As we previously discussed, "other acts" evidence is admissible if there is substantial proof that the alleged other act was committed by the defendant and the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Lowe and Broom, supra; Evid.R. 404(B); R.C. 2945.59.
Athens City Ordinance 13.05.05 is identical to R.C. 2907.09, which provides that
 (A)No person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household:
 (1)Expose his or her private parts, or engage in masturbation;
(2)Engage in sexual conduct;
 (3)Engage in conduct that to an ordinary observer would appear to be sexual conduct or masturbation.
R.C. 2907.09(A). The requisite mental state for the crime of public indecency is recklessness. R.C. 2901.22(C) defines the mental state of recklessness as follows:
A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. R.C. 2901.22(C).
Appellant attempted to show through his testimony that on the morning of the incident, he tried to keep his "private parts" covered and that any exposure on his part was accidental and not reckless. The state proffered the evidence concerning the prior incident when appellant's "private parts" were exposed to Palmer, to discount appellant's theory of accidental exposure. The testimony elicited from appellant concerning this prior incident was being presented to establish appellant's intent or requisite mental state. R.C. 2945.59; Evid.R. 404(B). In other words, since appellant was aware of the known risk of being seen in the nude when his son's friends were present in the house, as evidenced by this prior incident, walking around his house in such a manner that it was likely he would expose himself to his son's friends could be deemed reckless as the trial court found. See R.C. 2901.22(C).[1]
Since the state was attempting to show appellant's actions on the morning in question to be reckless, the questioning of prior exposure by appellant was admissible under Evid.R. 404(B). However, the evidence presented must also have been admissible under Evid.R. 403(A).
Evid.R. 403(A) provides that, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Although the exclusionary language of the rule is mandatory, we apply an abuse of discretion standard when evaluating a trial court's evidentiary ruling. See Renfro and Cartee, supra.
Appellant has made no showing that the trial court acted arbitrarily, unreasonably, or unconscionably. See Apanovitch, supra. Also, as previously noted, this was a bench trial and absent an affirmative showing by the trial court that it relied on the questionable evidence, the presumption that it relied on material, relevant, and competent evidence exists. See White, Post, and Filiaggi, supra.
 C.
Similar to his prior argument, appellant also argues that it was erroneous for the trial court to allow the prosecution to call Palmer as a rebuttal witness to testify to the alleged prior incident.
On cross-examination, the state questioned appellant concerning the prior incident where Palmer saw appellant in the nude. This incident had not been raised by the defense in its direct examination of appellant or in its case-in-chief. The state then offered the testimony of Palmer as a rebuttal witness to contradict appellant's version of the incident. The rebuttal witness testimony was designed to attack appellant's credibility. Evid.R. 608(B) provides that
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. Evid.R. 608(B).
In State v. Strobel (1988), 51 Ohio App.3d 31, 554 N.E.2d 916, the Third District Court of Appeals ruled that rebuttal witness testimony is extrinsic evidence, where that testimony was presented by the state to attack the credibility of a witness, concerning specific instances of conduct which were "brought out" by the state on cross-examination. In so ruling, the Strobel court relied on the Supreme Court of Ohio's decision inState v. Kamel (1984), 12 Ohio St.3d 306, 466 N.E.2d 860. In Kamel, the Supreme Court of Ohio stated that
The meaning of [Evid.R. 608(B)] is very clear. Other than the Evid.R. 609 exception for certain criminal convictions, a witness' credibility may not be impeached by extrinsic proof of specific instances of his conduct. Such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid.R. 608(B). State v. Kamel, 12 Ohio St.3d at 311, 466 N.E.2d at 865.
Following the ruling in Kamel, the testimony of Palmer as a rebuttal witness was improperly presented to attack appellant's credibility and truthfulness in regard to appellant's recollection of the prior incident between himself and Palmer.
Although Palmer's rebuttal testimony was improperly admitted, the state's questions directed to appellant on cross-examination regarding the incident were proper. As the Strobel court properly noted,
 Despite our conclusion as to the rebuttal testimony, we also wish to note that the state was not necessarily prohibited by Evid.R. 608(B) from cross-examination of the defendant concerning the prior instances of sexual contact involving the two rebuttal witnesses. Evid.R. 608(B) provides that a witness may, in the court's discretion, be questioned on cross-examination as to specific instances of a witness's conduct "* * * if clearly probative of truthfulness or untruthfulness * * *." However, the weight of authority is clear that the examiner is then "stuck" with the responses given by the witness on cross-examination. See State v. Leuin [(1984), 11 Ohio St.3d 172, 174, 464 N.E.2d 552, 555,] citing State v. Gardner (1979), 59 Ohio St.2d 14, 19, 391 N.E.2d 337, 341.
State v. Strobel, 51 Ohio App.3d at 36, 554 N.E.2d at 922.
However, reversible error is not necessarily created by simply allowing improper testimony to be presented and admitted.
 As for [the witness'] rebuttal testimony, while such evidence was arguably admitted in violation of Evid.R. 608(B), the trial court's action does not constitute reversible error if it was "harmless beyond a reasonable doubt."State v. Eubank (1979), 60 Ohio St.2d 183, 187, 398 N.E.2d 567. In determining this issue we may give weight to the fact that the case was tried to the court, and not to a jury. Id. In such cases, "a judge is presumed to consider only the relevant, material and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record." Id., citing State v. White (1968), 15 Ohio St.2d 146, 151, 239 N.E.2d 65.
City of Toledo v. Clark (Mar. 13, 1998), Lucas App. No. L-97-1103, unreported. It does not affirmatively appear from the record that the trial court relied on Palmer's rebuttal testimony in reaching its judgment, and the trial court's error was harmless beyond a reasonable doubt. See id.; Williams, supra.
Accordingly, appellant's First Assignment of Error is hereby OVERRULED in toto.
 II.
In his Second Assignment of Error, appellant argues that the trial court erred by failing to find prosecutorial misconduct based on the prosecutor's introduction of evidence excluded by the prior unrecorded court ruling.
As we have previously discussed, a trial court speaks only through its journal entry, and a trial court's ruling on a motion in limine is preliminary and may be revisited by the court. See Wray, supra. Although the record makes it clear that the trial court did make a ruling on appellant's motion, we have no journal entry reflecting that ruling. As such, we are unable to determine whether the state complied with that ruling.
The Supreme Court of Ohio has recently reiterated the proper test for prosecutorial misconduct.
The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883,885. The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209,219, 102 S.Ct. 940, 947. State v. Jones (2000), 90 Ohio St.3d 403, 420,739 N.E.2d 300, 318.
Appellant focuses the predominant portion of his argument on the questions pertaining to the showing of the NC-17 video, which was supposedly excluded from being presented by the trial court's ruling on appellant's motion in limine. As we have already noted, we have no record of the trial court's ruling and even if we did, that ruling was preliminary. See Wray, Grubb, and White, supra. As such, the trial court's ruling on the motion in limine was subject to the trial court's subsequent evidentiary rulings. See id. Also, the inflammatory nature of the video's content was not discussed at trial. The testimony given was that a video was shown and appellant's son lied about it to investigators.
Therefore, we cannot find the prosecutor's questions to be improper, or that appellant's rights to a fair trial were substantially affected. See Jones, supra. Accordingly, appellant's Second Assignment of Error is OVERRULED.
Since appellant has failed to raise any error in regard to his conviction requiring reversal, we AFFIRM the judgment of the trial court.
JUDGMENT AFFIRMED
It is ordered that the JUDGMENT BE AFFIRMED and appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the ATHENS COUNTY MUNICIPAL COURT to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILY CONTINUED FOR A PERIOD NOT TO EXCEED SIXTY (60) DAYS UPON THE BAIL PREVIOUSLY POSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, J.: Concur in Judgment Only.
 _____________________________ David T. Evans, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] Even if the use of this "other acts" evidence was improper, which we do not find, appellant has not shown that there is a "reasonable possibility that the testimony contributed to [his] conviction." State v.Treesh, 90 Ohio St.3d at 483, 739 N.E.2d at 773.