[Cite as *State v. Kerr*, 2012-Ohio-3360.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97452

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STEVEN KERR

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-539648

**BEFORE:**   Cooney, P.J., S. Gallagher, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   July 26, 2012

**ATTORNEY FOR APPELLANT**

Brett M. Mancino
75 Public Square
Suite 1016
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Brett Kyker
Mollie Ann Murphy
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

COLLEEN CONWAY COONEY, P.J.:

{¶1} Defendant-appellant, Steven Kerr ("Kerr"), appeals his felony theft conviction. Finding no merit to the appeal, we affirm.

{¶2} In August 2010, Kerr was indicted on a single count of theft. The case proceeded to a jury trial with his codefendant, Michael DeBartolo ("DeBartolo"). DeBartolo was indicted on one count of involuntary manslaughter, two counts of failure to provide for a functionally impaired person in violation of R.C. 2903.16(A) and (B), and one count of theft. The charge of failure to provide for a functionally impaired person in violation of R.C. 2903.16(A) was dismissed prior to the start of trial.

{¶3} The following evidence was adduced at the joint jury trial.

{¶4} DeBartolo and Kerr lived together at the Imperial apartment building in Lakewood, Ohio. Tressa Elizabeth Carnegie ("Carnegie") lived in the next unit. Neighbors, witnesses, and physicians testified that DeBartolo claimed to be her nephew and acted as Carnegie's constant caregiver. DeBartolo and Kerr collected her mail, drove her to medical appointments, and were observed caring for her in and around the apartment. In 2005, a friend of Carnegie's filed a complaint with Adult Protective Services, alleging abuse and neglect. The investigation found that it was "unclear" whether the allegations were legitimate. In 2007, Jennifer Kravec, the leasing agent at

the Imperial apartment building, filed a complaint with Adult Protective Services. After that investigation, the allegations were found to be "not validated."

{¶5} Dr. Michael Felver was Carnegie's physician from 2001 until 2007. He prescribed an epilepsy medication for her after an incident in which DeBartolo reported Carnegie had seizure symptoms. Dr. Matthew Faiman ("Faiman") took over Carnegie's care in 2007 and initially saw her for a general checkup. She was accompanied by DeBartolo. Faiman ordered blood work that revealed inadequate levels of Carnegie's seizure medication in her system.

{¶6} In addition, Faiman treated Carnegie for urinary tract infections, once in person in December 2007 and once over the phone in January 2008, each time prescribing antibiotics. Then on April 11, 2008, DeBartolo called Faiman's office and attempted to schedule an appointment for Carnegie. DeBartolo told the nurse who answered the phone that Carnegie's leg was bluish and had been so for about one week. He was instructed to take her to the emergency room immediately. The nurse in Dr. Faiman's office testified that DeBartolo was reluctant to take her advice but eventually agreed.

{¶7} DeBartolo brought Carnegie to the Fairview Hospital emergency room. The admitting doctor testified that upon arrival she was in critical condition. Her working diagnosis was septic shock, seizures, and respiratory and renal failure. Doctors found evidence of malnutrition and non-therapeutic levels of her epilepsy medication in her system. Carnegie's intensive care physician, Dr. Jorge Guzman, testified that her septic shock was not a condition that materialized overnight. He testified that she

remained on a ventilator and was unresponsive throughout the duration of her hospital stay. An investigator from Adult Protective Services received allegations of neglect and exploitation from the hospital social worker. The investigator found the allegations to be "validated."

{¶8} Carnegie was transferred from the hospital on May 2, 2008 to a long-term care facility. Unable to recover, she died on May 14, 2008 at the age of 83. An autopsy was performed by the Cuyahoga County Coroner's office. Based on the cause of death and the reports of medical neglect from the hospital, as well as police and Adult Protective Services reports, the coroner deemed the manner of her death to be a homicide.

{¶9} Extensive evidence was presented at trial regarding Carnegie's finances prior to and after her death.

{¶10} The jury found Kerr guilty of theft from an elderly person, greater than $25,000 but less than $100,000. The jury found DeBartolo guilty of all three charges against him.[1] Kerr was sentenced to one year of community control sanctions.

{¶11} Kerr now appeals, raising four assignments of error.[2]

<u>Sufficiency and Manifest Weight</u>

{¶12} In his first assignment of error, Kerr argues that his conviction for theft of property in excess of $25,000 is not supported by legally sufficient evidence. He argues

---

[1] DeBartolo's appeal is Appeal No. 97453.

[2] The first assigned error is separated into two assignments of error pursuant to Kerr's motion.

in his second assignment of error that this conviction is against the manifest weight of the evidence.

{¶13} In *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶113, the Ohio Supreme Court explained the standard for sufficiency of the evidence:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* ( 1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶14} In a sufficiency exercise, however, this court does not make determinations of credibility. Rather, the court decides, based on the evidence presented if believed, whether any rational trier of fact could have found the defendant guilty of the crimes charged.

{¶15} Although the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest weight challenge questions whether the prosecution has met its burden of persuasion. *Thompkins* at 390. When considering a manifest weight claim, a reviewing court must examine the entire record, weigh the evidence, and consider the credibility of witnesses. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The court may reverse the judgment of conviction if it appears that the factfinder "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered.'"   *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶16} A judgment should be reversed as against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction."   *Thompkins* at 387.

{¶17} Kerr was convicted of theft in violation of R.C. 2913.02(A)(2), which states:

No person, with purpose to deprive the owner of property or services, shall

knowingly obtain or exert control over either the property or services in any

of the following ways:   * * *   (2) Beyond the scope of the express or

implied consent of the owner or person authorized to give consent[.]

{¶18} The State presented evidence that Kerr had cashed numerous checks drawn from Carnegie's accounts.   Audrey Brownlow-McRae ("Brownlow-McRae"), a KeyBank employee, authenticated records at trial pertaining to Carnegie's KeyBank accounts.   Seventeen of the checks authenticated by Brownlow-McRae were issued to Kerr from Carnegie's account.   These 17 checks totaled $31,166.69 and were issued to Kerr from Carnegie's KeyBank account between September 2003 and December 2007.

{¶19} Jessica Toms ("Toms"), a forensic scientist with the Bureau of Criminal Identification and Investigation, testified regarding the handwriting and signatures on the checks presented as evidence.   Toms testified that DeBartolo was most likely the author of the bodies of the 17 checks made payable to Kerr, but she was unable to give a conclusive opinion regarding the signatures on these checks.   She was not able to either

identify or exclude Kerr as the writer of the checks, "due to the limited amount of individual characteristics present in the question entries" and the limited writing samples available for Carnegie.

{¶20} Brownlow-McRae also testified regarding ATM withdrawals from Carnegie's account. Between February 1, 2008 and April 11, 2008, there were 29 ATM withdrawals totaling $8,120. Between April 12 and May 14, 2008, there were ten ATM withdrawals totaling $3,000. Carnegie was admitted to the hospital on April 11 and passed away on May 14. She had been on a ventilator and unresponsive from April 11 until May 14, and by her treating doctors' testimony, she had most likely been gravely ill prior to being admitted to the hospital on April 11.

{¶21} In addition, Danielle Spear ("Spear") of Fifth Third Bank testified that Kerr was the signator listed on an account that was opened on May 10, 2008, while Carnegie was hospitalized. As the signator, Kerr was the only person authorized to conduct transactions. Evidence was presented that DeBartolo or Kerr closed Carnegie's Morgan Stanley IRA account on May 16, 2008, which she had opened in 1992, and deposited the proceeds into the Fifth Third Account. A subsequent check was then written from the Fifth Third Account to Carnegie, after her death, in the same amount that was deposited from the Morgan Stanley IRA. Two other checks were drawn from this account, one for cash and one for Kerr's attorney.

{¶22} Kerr argues that there is no evidence to show who made the ATM withdrawals or who signed the checks. We note that proof of guilt may be made by

circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value. *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988); *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492. Moreover, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks* at paragraph two of the syllabus. Indeed, "[c]ircumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence." *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). In the instant case, both direct and circumstantial evidence illustrate Kerr's involvement in the theft of Carnegie's assets while she was unconscious in the hospital.

{¶23} Moreover, Kerr's reliance on *State v. Wells*, 2d Dist. No. 2008 CA 6, 2009-Ohio-908, is unavailing as it is factually distinguishable. Kerr has failed to set forth any evidence to show that he was able to procure a valid consent from Carnegie regarding the Fifth Third account and the IRA check used to pay Kerr's attorney.

{¶24} After viewing the evidence in a light most favorable to the prosecution, we find sufficient evidence to establish, beyond a reasonable doubt, that Kerr, with the purpose to deprive Carnegie of her property, did knowingly obtain or exert control over her finances beyond the scope of the express or implied consent of Carnegie. Moreover, based on the aforementioned facts and circumstances, we find that the conviction is not against the manifest weight of the evidence. We cannot say that the jury lost its way and created a manifest injustice in convicting Kerr of theft.

{¶25} Accordingly, Kerr's first and second assignments of error are overruled.

Handwriting Expert

{¶26} In his third assignment of error, Kerr argues that his due process rights were violated when the court allowed the State to present opinion testimony from a handwriting expert that went beyond her expertise, and that had minimal probative value that was substantially outweighed by the danger of unfair prejudice and misleading to the jury.

{¶27} Evid.R. 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

{¶28} In the instant case, the record supports the trial court's qualification of Jessica Toms as a handwriting expert because she clearly had specialized knowledge, skill, experience, training, and education that assisted the jury in understanding the evidence.

{¶29} Kerr argues that Toms testified that "no conclusion" could be drawn regarding the author of Carnegie's signatures on the checks admitted as evidence, as well as on the documents. Kerr argues that Toms exceeded the proper testimony when she added her own opinion to explain her conclusion. The State argues that offering her opinion is exactly what Toms was asked to do in her testimony and did not exceed her expertise in doing so. "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially

prejudiced thereby, an appellate court should not disturb the decision of a trial court."
*State v. Joseph*, 73 Ohio St.3d 450, 460, 653 N.E.2d 285 (1995), citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), paragraph seven of the syllabus. Furthermore, Kerr has failed to cite any authority to support his argument that Toms exceeded her expertise other than his making a conclusory statement, contrary to App.R. 16(A)(7).

{¶30} Regardless, Kerr has failed to show how he was prejudiced by Toms's testimony. Assuming arguendo that Kerr did not forge Carnegie's signature, the State presented sufficient evidence of Kerr's theft pertaining specifically to those transactions that occurred after Carnegie's hospitalization and death. Therefore, the trial court did not abuse its discretion in qualifying Toms as an expert and admitting her testimony.

{¶31} Accordingly, Kerr's third assignment of error is overruled.

Joinder

{¶32} In his fourth assignment of error, Kerr argues that his due process rights were violated when the trial court did not separate his trial from DeBartolo's. Kerr argues that the prejudice caused by his being tried with DeBartolo is presumptive and, due to DeBartolo's additional charges, the trial court erred in failing to separate the two trials.

{¶33} Defendants may be charged in the same indictment pursuant to Ohio Crim.R. 8(B) as follows:

Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.

**{¶34}** The law favors the joinder of defendants and the avoidance of multiple trials because joinder conserves judicial and prosecutorial time, lessens the expenses of multiple trials, diminishes the inconvenience to witnesses, and minimizes the possibility of incongruous results from successive trials before different juries. *State v. Thomas*, 61 Ohio St.2d 223, 400 N.E.2d 401 (1980).

**{¶35}** Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, the trial court is required to order separate trials. *See* Crim.R. 14. A defendant claiming error in the denial of severance must affirmatively show that his rights were prejudiced and that the trial court abused its discretion in refusing separate trials. *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶69, citing *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981).

**{¶36}** However, a party waives any claim of error by failing to raise an objection to the joinder. In addition, in *State v. Owens*, 51 Ohio App.2d 132, 366 N.E.2d 1367 (9th Dist.1975), paragraph two of the syllabus, the court held that:

> A motion for severance due to prejudicial misjoinder under rules of procedure for relief from prejudicial misjoinder *must be renewed* at the

close of the state's case or at the conclusion of all the evidence and unless made at that time, it is waived. (Emphasis added.)

**{¶37}** *See also* Crim.R. 8(B); *State v. Walker*, 66 Ohio App.3d 518, 585 N.E.2d 848 (8th Dist.1990); *State v. Strobel*, 51 Ohio App.3d 31, 554 N.E.2d 916 (3d Dist.1988). The record reflects that no motion for severance was renewed at the close of the State's case or at the conclusion of all the evidence. Thus, the issue is waived.

**{¶38}** Regardless, even if Kerr had properly renewed his objection to the joinder, we are not persuaded that he suffered prejudice as a result of the joinder. DeBartolo did not testify in his own defense and, thus, did not implicate Kerr. In addition, neither DeBartolo nor Kerr made statements that were introduced at trial.

**{¶39}** Despite Kerr's argument that he was prejudiced by the joinder, he has failed to show that the jury was unable to separate the two defendants. Merely because alleged inflammatory evidence is admitted against one defendant not directly involving another codefendant, does not in and of itself show substantial prejudice in the latter's trial. *See United States v. Gallo*, 763 F.2d 1504 (6th Cir.1985). Further, a jury must be presumed capable of sorting out the evidence submitted at trial and considering the case of each defendant separately. *See United States v. Causey*, 834 F.2d 1277 (6th Cir.1987).

**{¶40}** Given the totality of the evidence against Kerr, as discussed in our resolution of the first two assignments of error, we cannot say that the jury concluded Kerr was guilty by association. The jury's reliance on the evidence and testimony regarding Kerr's charge was sufficient to sustain his conviction. Thus, we find no error in the joinder of the two cases.

**{¶41}** Accordingly, Kerr's fourth assignment of error is overruled.

**{¶42}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KENNETH A. ROCCO, J., CONCUR